EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>    Recurrido<br><br>            v.<br><br>Liliana Irizarry Irizarry<br>    Acusada-Peticionaria | Certiorari<br><br>2002 TSPR 62<br><br>156 DPR _____ |

Número del Caso: CC-2001-466


Fecha: 10/mayo/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional V


Juez Ponente:
                    Hon. Rafael Ortiz Carrión


Abogado de la Parte Peticionaria:
                    Lcdo. Alejandro A. Suárez Cabrera


Oficina del Procurador General:
                    Lcda. Blanca Díaz Segarra
                    Procuradora General Auxiliar


Materia: Alteración a la Paz

    Este documento constituye un documento oficial del Tribunal Supremo
    que está sujeto a los cambios y correcciones del proceso de
    compilación y publicación oficial de las decisiones del Tribunal.
    Su distribución electrónica se hace como un servicio público a la
    comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**El Pueblo de Puerto Rico**

    **Recurrido**

        **vs.**                **CC-2001-466**        **CERTIORARI**

**Liliana Irizarry Irizarry**

    **Acusada-peticionaria**

Opinión del Tribunal emitida por el Juez Asociado señor REBOLLO LÓPEZ

En San Juan, Puerto Rico, a 10 de mayo de 2002

**El 23 de mayo de 2000, ocurrió un incidente en la escuela John F. Kennedy de Santa Isabel, Puerto Rico, en el cual se vieron involucradas <u>dos maestras</u> del Sistema de Educación Pública de nuestra Isla: la aquí peticionaria, Sra. Liliana Irizarry Irizarry, maestra del referido plantel escolar, y la Sra. Migdalia Torres Mateo, maestra de una escuela superior ubicada en el mismo municipio, y quien al momento de los hechos fungía como Coordinadora de Distrito de la Federación de Maestros.[1]**

---

[1] **Para esta fecha, se había ratificado a la Federación de Maestros como representante sindical exclusivo de los maestros, situación la cual, según surge del expediente, añadió cierto malestar al ambiente imperante entre los maestros de la Escuela, que, dicho sea de paso, ya se había visto afectado por la desestimación de una demanda que la Asociación de Maestros de Puerto Rico había incoado contra la Federación.**

A raíz del referido incidente, contra la Sra. Irizarry se radicó una denuncia por conducta violatoria del Artículo 260 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4521. Específicamente, a la aquí peticionaria se le imputó haber alterado la paz de la Sra. Torres Mateo al decirle "embustera" y "vieja ridícula" cuando, habiéndole cuestionado Irizarry a Torres Mateo sobre la supuesta remoción de ciertos documentos de la Asociación de Maestros[2] del tablón de edictos que ubica en la oficina de la directora del plantel, ésta respondió desconocer la razón de su reclamo.

Llegada la fecha del juicio en su fondo, la prueba de cargo consistió en el testimonio de la alegada perjudicada, la Sra. Torres Mateo y del Policía Municipal Félix Espada[3], quien tuvo a su cargo la investigación de la querella radicada por la Sra. Torres. La defensa, por su parte, presentó los testimonios de la Sra. Marta de Jesús, Directora de la Escuela; la Sra. Marisol Burgos, Secretaria de la Directora; y del Sr. Wilfredo Márquez Colón, maestro de matemáticas del referido plantel escolar.

Así las cosas, la Sala Municipal de Santa Isabel del Tribunal de Primera Instancia emitió un fallo condenatorio contra la acusada, imponiéndole el pago de una multa ascendente a trescientos dólares ($300.00) por el delito de Alteración a la Paz.

---

[2] Tanto la Sra. Liliana Irizarry como otros miembros de su familia están afiliados activamente a esta organización.

[3] Surge del expediente que el Sr. Espada fue estudiante de la supuesta perjudicada.

Inconforme con dicha determinación, la Sra. Irizarry acudió ante el Tribunal de Circuito de Apelaciones. Planteó, en síntesis, que no se establecieron los elementos esenciales del delito imputado y que el tribunal apelado erró al determinar que la prueba del ministerio público estableció su culpabilidad más allá de toda duda razonable. El foro apelativo intermedio sostuvo la convicción al entender que no hubo indicio alguno de prejuicio, pasión, parcialidad o error manifiesto en la decisión tomada por el tribunal de instancia.

Insatisfecha, la Sra. Irizarry acudió ante este Tribunal. Plantea que erró el tribunal de instancia:

> ... al confirmar la determinación de no ha lugar a la moción de absolución perentoria oportunamente solicitada por la peticionaria.

> ... al confirmar que la denuncia tal cual redactada imputa la comisión de delito.

> ... al no intervenir en la apreciación de la prueba testifical vertida durante el transcurso de la vista aun existiendo los elementos de excepción que le facultaban para ello y en su consecuencia [...]:

>> 1.    [resolver que] se establecieron los elementos del delito;
>> 2.    [darle] credibilidad el testimonio contradictorio de la testigo Migdalia Torres Mateo;
>> 3.    no darle peso alguno al testimonio de los testigos de defensa presentados;
>> 4.    validar la determinación de que no se estableció duda razonable en el transcurso de la vista;
>> 5.    validar la determinación de que la prueba presentada por el ministerio público fue suficiente para rebatir la presunción de inocencia.

El 20 de julio de 2001, emitimos Resolución mediante la cual le ordenamos a la parte recurrida que, en el término de veinte (20) días, mostrara causa por la cual no debíamos expedir el auto solicitado y dictar Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones. El Procurador General compareció, en cumplimiento de la referida orden, el 17 de agosto de 2001. Estando en posición de resolver, procedemos a así hacerlo. Por estar íntimamente relacionados los errores señalados, habremos de discutirlos de manera conjunta.

I

La presunción de inocencia, uno de los derechos fundamentales que le asiste a todo acusado de delito, está consagrada en el Artículo II, Sección 11, de nuestra Constitución, el cual dispone que:

> [e]n todos los procesos criminales, el acusado disfrutará del derecho ... a gozar de la presunción de inocencia....

Por otro lado, la Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap.II R. 110, establece, en términos más específicos, que:

> [e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en todo caso de existir duda razonable acerca de su culpabilidad, se le absolverá.

La máxima que rige nuestro ordenamiento a los fines de que la culpabilidad de una persona que ha sido acusada de delito sea demostrada con prueba suficiente y más allá de toda duda razonable es consustancial con la presunción de inocencia y constituye uno de los imperativos del debido proceso de ley. Pueblo v. León Martínez, 132 D.P.R 746 (1993).

Adviértase que, como consecuencia jurídica inescapable del mencionado mandato constitucional, es al Estado a quien le corresponde la obligación de presentar evidencia y cumplir con la carga de la prueba para establecer la culpabilidad del acusado. Tal obligación no es susceptible de ser descargada livianamente pues, como es sabido, no basta que el Estado presente prueba que meramente verse sobre cada uno de los elementos del delito imputado, o prueba suficiente, sino que, más allá de eso, es necesario que ésta, además de ser suficiente, sea satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Véase Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991); Pueblo v. Rodríguez Román, 128 D.P.R 121 (1991); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986).

Precisamente, con respecto al asunto de la evaluación y la suficiencia de la prueba, la Regla 10 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV R. 10, establece que:

> El tribunal o juzgador de hechos deberá evaluar la evidencia presentada, a los fines de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los siguientes principios:

(A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes.

[...]

De conformidad con lo anterior y en atención a la naturaleza de un proceso criminal, como la presunción de inocencia cobija al acusado en cuanto a todo elemento esencial del delito, el peso de la prueba permanece, durante todas las etapas del proceso a nivel de instancia, sobre el Estado. Pueblo v. Túa, 84 D.P.R 39 (1961). Dicho de otro modo, el acusado no tiene obligación alguna de aportar prueba para defenderse; más bien, puede descansar plenamente en la presunción de inocencia que le asiste, Rosaly Soto, ante, la cual presunción sólo puede derrotarse, repetimos, con prueba que establezca la culpabilidad del acusado más allá de toda duda razonable. Es decir, tanto los elementos del delito como la conexión del acusado con el mismo tienen que ser demostrados con ese quantum de prueba. Véase Pueblo v. Bigio Pastrana, 116 D.P.R. 748 (1985), y casos allí citados.

En Bigio Pastrana, ante, sostuvimos que "duda razonable" no es una duda especulativa o imaginaria como tampoco lo es cualquier duda posible. "Duda razonable" es aquella duda fundada que surge como producto del raciocinio de todos los elementos de juicio envueltos en el caso. Pueblo v. Cruz Granados, ante. Para que se justifique la absolución de un acusado, la duda razonable debe ser el resultado de la consideración serena, justa e imparcial de la totalidad de la

evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación. En resumidas cuentas, "duda razonable" no es otra cosa que la insatisfacción de la conciencia del juzgador con la prueba presentada. Pueblo v. Cabán Torres, ante.

Reiteradamente hemos afirmado que, como cuestión de derecho, la determinación de si se probó la culpabilidad del acusado más allá de duda razonable es revisable en apelación; ello así pues la apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y derecho. Pueblo v. Rivero Lugo y Almodóvar, 121 D.P.R 454 (1988). El análisis de la prueba presentada requiere tanto de la experiencia del juzgador como de su conocimiento del Derecho, elementos éstos necesarios para darle a la controversia una solución justa. Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R 545 (1974).

No cabe duda que, en el ejercicio de tan delicada función revisora, no podemos abstraernos de las limitaciones que rigen el proceso de evaluación de la prueba por parte de un tribunal apelativo. Al enfrentarnos a la tarea de revisar cuestiones relativas a convicciones criminales, siempre nos hemos regido por la norma a los efectos de que la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador por lo cual los tribunales apelativos sólo intervendremos con dicha apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. Pueblo v. Maisonave, 129 D.P.R 49 (1991). Sólo ante la presencia de estos elementos y/o cuando la apreciación de la prueba no concuerde con la realidad fáctica o ésta sea inherentemente imposible

o increíble, Pueblo v. Acevedo Estrada, res. el 19 de enero de 2000, 2000 T.S.P.R. 8, y casos allí citados, habremos de intervenir con la apreciación efectuada.

Ello no obstante, en casos penales debemos siempre recordar que el referido proceso analítico tiene que estar enmarcado, por imperativo constitucional, en el principio fundamental de que la culpabilidad del acusado debe ser probada más allá de toda duda razonable. Pueblo v. Carrasquillo, ante. En consecuencia, "y aun cuando ello no ocurre frecuentemente, hemos revocado sentencias en las cuales las determinaciones de hecho, aunque sostenidas por la prueba desfilada, no establecen la culpabilidad del acusado más allá de duda razonable." Pueblo v. Acevedo Estrada, ante; Pueblo v. Meléndez Rolón, 100 D.P.R. 734 (1972); Pueblo v. Rivera Arroyo, 100 D.P.R 46 (1971). No hemos vacilado en dejar sin efecto un fallo inculpatorio cuando el resultado de ese análisis "nos deja serias dudas, razonables y fundadas, sobre la culpabilidad del acusado." Pueblo v. Carrasquillo, ante, a la pág. 551.

Sabido es que, ante la ausencia de un mecanismo infalible para encontrar la verdad, la determinación de lo que es o no cierto es un deber de conciencia, deber éste que no está reservado sólo al juzgador de los hechos sino que compete asimismo a los tribunales apelativos. Pueblo v. Carrasquillo, ante, pág. 551-552. Es decir, aun cuando nuestra función revisora, como previamente señaláramos, tiene ciertas limitaciones, ello no implica que el foro contra cuyo dictamen

se recurre está exento de errar como tampoco supone que, en el afán de ceñirnos a la doctrina de la deferencia, permitiremos que prevalezca un fallo condenatorio incluso estando convencidos de que un análisis integral de la prueba no establece la culpabilidad del acusado más allá de duda razonable. Nosotros, al igual que el foro recurrido, tenemos no sólo el derecho sino el deber de tener la conciencia tranquila y libre de preocupación. <u>Pueblo</u> v. <u>Acevedo Estrada</u>, ante; <u>Pueblo</u> v. <u>Carrasquillo</u>, ante.


## II

La prueba presentada por el Ministerio Público ante el tribunal de instancia para sostener el cargo imputado a la Sra. Irizarry consistió en los testimonios de la perjudicada, Sra. Torres Mateo, y del Sr. Félix Espada, agente que tuvo a su cargo la investigación de la querella. Según surge de la prueba que tuvo ante sí el foro sentenciador --en relación con la cual contamos con una transcripción de la misma-- la perjudicada testificó, básicamente, que el día de los hechos, se personó a la Escuela John F. Kennedy para realizar ciertas gestiones inherentes a su puesto como Coordinadora de Distrito de la Federación de Maestros. Una vez allí, habiendo orientado al personal clasificado en cuanto al plan de salud, se dirigió hacia la oficina de Marta de Jesús, Directora del plantel, y colocó en el tablón de edictos allí ubicado un documento relativo a la  desestimación de una demanda incoada por la

Asociación de Maestros contra la Federación; luego fue a atender otros asuntos.

Previo a marcharse de la escuela, acudió nuevamente a la oficina de la Directora; allí se encontró con la Sra. Irizarry. Según el testimonio de la perjudicada, la Sra. Irizarry, quien se encontraba nerviosa y molesta, le imputó el acto de haber removido del tablón una propaganda de la Asociación, hecho que ella negó. La perjudicada declaró que al notar que la Sra. Irizarry estaba nerviosa y molesta, a la vez que le hacía gestos con un papel que tenía en sus manos, comenzó a sentirse un poco alterada.

Posteriormente, como la Sra. Torres Mateo se negó a hablar del asunto de la remoción de los papeles, la aquí peticionaria, alegadamente, le dijo "embustera" y "vieja ridícula", palabras que alegadamente la ofendieron y lastimaron. Declaró, además, que había un clima de malestar entre los integrantes de ambas entidades sindicales y que --en ocasiones anteriores-- había habido discusiones en las que la Sra. Irizarry reclamaba los derechos de la Asociación. También declaró que a pesar de que ella se enfrascaba frecuentemente en este tipo de situación, siempre gozaba de completa calma por cuanto la desestimación de la demanda incoada por la Asociación en contra de su opositor sindical debía poner fin a las disputas. Aunque negó haber removido documento alguno del tablón de edictos, reconoció que se sentía en todo el derecho de hacerlo pues la Federación era el representante sindical exclusivo de los maestros.

Por otro lado, el ministerio público también presentó el testimonio del Sr. Espada, policía que llevó a cabo  el proceso investigativo que culminó con la radicación de la querella contra la aquí peticionaria, <u>luego de que tanto ésta como la Sra. Torres Mateo le denunciaran lo acontecido</u>. El policía, <u>quien fuera estudiante de la querellante</u>, testificó, en síntesis, <u>que las versiones ofrecidas por éstas eran distintas y que fue la versión de la Sra. Torres Mateo la que entendió correcta a los fines de radicar la denuncia</u>. Según su testimonio, la Sra. Torres Mateo le dijo que la querellada le había proferido las antedichas expresiones a la vez que le manoteaba la cara y que esos hechos habían sido presenciados por otros maestros.

De otra parte, la prueba de la defensa consistió del testimonio de la Sra. Marta De Jesús, Directora de la Escuela; su secretaria, la Sra. Marisol Burgos; y del Sr. Wilfredo Márquez, maestro del referido plantel.[4]

En lo que respecta a la Sra. Marisol Burgos, ésta testificó que al llegar a su lugar de trabajo el día de los hechos, se encontró a la Sra. Torres Mateo, quien,  luego de remover del tablón de edictos unos recortes de periódico referentes a la Asociación de Maestros, y en su lugar, colocar otro documento, le preguntó a la Sra. Burgos si tenía la solicitud del Plan de Salud de la Federación. Eventualmente, aquella se retiró de la oficina.

La Sra. Burgos testificó, además, que la Directora, quien se encontraba en su oficina en esos momentos, mandó a buscar a la Sra. Torres Mateo bajo el entendido de que ésta tenía interés de hablar con ella. Minutos después, la Sra. Irizarry llegó a dicha oficina para entregar unos documentos de fin de curso, y se percató de que habían removido del tablón de edictos el documento de la Asociación. A preguntas de Liliana Irizarry, Burgos respondió que la Sra. Torres Mateo lo había removido. Así las cosas, cuando ésta última llegó a la oficina, según el testimonio de Burgos, la Sra. Irizarry le preguntó --en un tono tranquilo-- por qué había removido el papel en cuestión, a lo que Torres Mateo le respondió, visiblemente alterada, que ella no tenía derecho a pegar ningún documento en dicho lugar. Atestó, asimismo, la Sra. Burgos, que la querellada no había pronunciado las frases en disputa[5] como tampoco había manoteado a la quejosa. Declaró que no había sido entrevistada por el Policía Espada.

Por su parte, la Sra. Marta De Jesús, Directora del plantel, declaró que, al llegar a su oficina, estaban allí su secretaria, y, entre otras personas, la guardia escolar, quien le informó que la Sra. Torres Mateo se encontraba en la escuela, por lo que la Sra. De Jesús la mandó a buscar. La Directora declaró, en síntesis, que estando en su oficina, escuchó una

---

[4] Las partes estipularon el testimonio de otra testigo, la Sra. Awilda Irizarry Alvarado, quien habría de declarar sobre la buena reputación de la cual goza la querellada en su comunidad.
[5] En el contrainterrogatorio, la Sra. Burgos declaró, contrario a lo alegado por la perjudicada, que esas palabras se las había dicho la Sra. Torres a la Sra. Irizarry.

<u>conversación</u> y cuando advirtió que se trataba de la Sra. Irizarry y la Sra. Torres, les exhortó a que evitaran ese tipo de situación. <u>Atestó que en ningún momento escuchó a la querellada proferir las palabras que se le imputaban</u>.

Finalmente, la defensa de la Sra. Irizarry presentó como testigo al Sr. Wilfredo Márquez, maestro del referido plantel y presidente del Comité de Disciplina del mismo. En vista de que éste no presenció el incidente en la oficina de la Directora, su testimonio se limitó a lo que percibió cuando llegó al estacionamiento de la Escuela. Expresó el Sr. Márquez que al llegar a dicho lugar, se percató de un altercado entre Liliana Irizarry y la Sra. Torres por lo cual decidió intervenir para evitar cualquier conflicto posterior. En dicha ocasión, notó el que la Sra. Torres estaba "medio enfogonada".

III

Un examen integral y responsable de la transcripción de la prueba desfilada ante el tribunal de instancia en el presente caso causa en nuestro ánimo una intranquilidad de conciencia, esto es, una duda razonable y fundada, respecto a si el Estado demostró, más allá de duda razonable, la culpabilidad de la peticionaria Liliana Irizarry.

La referida intranquilidad o duda razonable y fundada tiene su origen, en primer término, en el <u>proceso investigativo y decisorio</u> seguido en el presente caso, el cual incluye y comprende: la situación de amistad entre la supuesta maestra perjudicada y el policía investigador; una investigación

policíaca obviamente incompleta y deficiente; una actuación poco acuciosa de parte del magistrado que determinó causa probable para arresto contra la peticionaria, actuación que causó que se pusiera en movimiento la maquinaria judicial con el propósito de encausar criminalmente a una persona sin que se tuvieran todos los elementos de juicio para llegar a una determinación justa y correcta.

Las Reglas 5 y 6 de las de Procedimiento Criminal regulan la etapa inicial del encausamiento criminal de una persona mediante la preparación de una denuncia y la determinación de causa probable para arrestar de parte de un magistrado, luego de este último "examinar" los testigos que sostienen lo imputado en la denuncia. Las mencionadas disposiciones reglamentarias tienen el loable propósito de que dicho magistrado determine, de manera objetiva e imparcial, si uno de nuestros conciudadanos debe, o no, ser encausado criminalmente en nuestra jurisdicción.[6]

Como es sabido, y conforme lo establece la citada Regla 5 de Procedimiento Criminal, la denuncia es un escrito jurado que imputa la comisión de un delito, el cual puede ser firmado

---

[6]     En Pueblo v. Jiménez Cruz, 145 D.P.R. 803, 812 (1998), expresamos, en lo pertinente, que tanto "... la vista que tiene lugar al amparo de la ... Regla 6, como aquella que se celebra al amparo de la Regla 23 de Procedimiento Criminal ..., exhiben características comunes." (Enfasis suplido.)

En Pueblo v. Andaluz Méndez, 143 D.P.R. 656, 662 (1997), expresamos, en lo pertinente, que la "... vista preliminar no es un minijuicio, y una vez quedan establecidos todos los elementos del delito y la conexión del imputado con éste a base de evidencia legalmente admisible, a tenor con las Reglas de

o suscrito por cualquier persona con conocimiento personal de los hechos o por un fiscal, policía o funcionario público, en casos relacionados con el desempeño de sus funciones y deberes, los cuales pueden suscribir dicho documento cuando los hechos imputados les consten por información y creencia.

En relación con incidentes como el que ocupa nuestra atención en el día de hoy, sobre los cuales existen versiones encontradas o diametralmente opuestas en cuanto a lo que realmente sucedió, se ha convertido en práctica común que  el policía investigador --en casos de delitos menos graves en que no interviene un fiscal-- luego de escuchar las diferentes versiones por boca de las personas involucradas en el incidente, hace --por decirlo así-- una "determinación inicial de credibilidad" sobre cuál de las dos versiones le resulta a él más aceptable, y procede a preparar un proyecto de denuncia contra una de las dos partes envueltas; proyecto de denuncia que somete ante un magistrado, el cual proyecto contiene la prueba señalada por el policía como "de cargo".

La carga de trabajo que tienen estos magistrados, no hay duda, es una pesada y ardua. Quizás debido al volumen de trabajo que tienen, de ordinario y conforme la práctica hoy día imperante, dichos magistrados proceden, de inmediato, a escuchar el testimonio de los testigos que el policía investigador ha enumerado como testigos de cargo en la denuncia, luego de lo cual proceden a hacer la correspondiente

---

Evidencia en vigor en ese momento, se justifica una determinación de causa probable."

determinación de causa probable para arresto al amparo de las disposiciones de la citada Regla 6 de Procedimiento Criminal.

Este "procedimiento", el cual desafortunadamente se ha generalizado en nuestra jurisdicción en casos de delitos menos graves, es lo que ha llevado a muchos de nuestros conciudadanos a expresar que los que determinan causa probable para arresto, en esta clase de situaciones, son los policías y no los magistrados, ya que en la mayoría de los casos resulta acusada la persona a la que el policía originalmente "no le creyó".

Dicha situación es contraria a, y desnaturaliza, el propósito que persiguen las Reglas de Procedimiento Criminal a los efectos de que sea un juez el que, de manera imparcial y libre de prejuicios e influencias, determine causa probable para arresto. No hay duda de que la experiencia que tienen los agentes del orden público, en la investigación y recreación de la escena de la comisión de un delito, resulta ser de una ayuda incalculable a dichos magistrados, razón por la cual su testimonio y apreciación de los hechos puede resultar valioso.

Ahora bien, la práctica de determinar causa probable, de una manera automática y siguiendo "ciegamente" la "determinación inicial", sobre responsabilidad en casos de delitos menos graves, que lleva a cabo el agente del orden público que realiza la investigación del caso, es una que no tiene cabida en nuestro ordenamiento jurídico. El magistrado instructor viene en la obligación de escuchar los testimonios de todas las personas que, voluntaria y libremente, deseen ante

él declarar, incluyendo las partes en controversia[7], y que tengan conocimiento de algún hecho que pueda arrojar luz sobre el incidente ante su consideración; incluso, si factible, procediendo a ordenar la citación de personas, no presentes, que puedan tener conocimiento personal de los hechos.

Luego de escuchar todos los testimonios, el magistrado instructor procederá a determinar, si ello resulta procedente en derecho, causa probable para arresto contra la persona o personas que él entiende responsable de lo ocurrido, por el delito público por el cual procede encausar a dicha persona o personas. En ese momento, dicho magistrado instruirá al agente investigador a preparar, y jurar, la correspondiente denuncia contra el imputado, o imputados, de delito.

El caso que hoy ocupa nuestra atención es un ejemplo clásico de la práctica a la cual hemos hecho referencia. El policía investigador entrevistó a las dos maestras involucradas en el incidente ocurrido. Conforme su testimonio, le dio entero crédito a la versión de la Sra. Torres Mateo, quien había sido su maestra[8]. Procedió, entonces, dicho policía a preparar un proyecto de denuncia contra la aquí peticionaria Liliana Irizarry Irizarry. El caso fue sometido ante el

_____

[7] En relación con las partes, el magistrado deberá informarles, a ambas, antes de que éstas procedan a testificar, sobre los derechos que le garantiza la Constitución del Estado Libre Asociado de Puerto Rico respecto al derecho contra la autoincriminación.

[8] Ese hecho, por sí solo, cuando menos causa dudas sobre la corrección de la apreciación que de los hechos hizo el referido agente del orden público.

magistrado instructor a base, _realmente_, del testimonio de un solo testigo, la supuesta maestra perjudicada.

El juez instructor en el presente caso --enfrentado a una situación sumamente particular, esto es, en la cual son llevadas a su presencia dos personas que, de ordinario, no comparecen en esa capacidad ante los tribunales: dos maestras de nuestro sistema de instrucción pública-- se limitó a escuchar el testimonio de la persona que el policía había señalado como perjudicada y procedió a determinar causa probable por el delito de Alteración a la Paz contra la aquí peticionaria. En nuestro criterio la situación planteada ameritaba que el juez instructor indagara sobre la posibilidad de la existencia de otros testigos, que no tuvieran interés personal en el caso y que, naturalmente, tuvieran conocimiento personal de los hechos; _no_ lo hizo. El magistrado, repetimos, procedió a determinar causa probable a base del testimonio, obviamente interesado, de una de las partes. A nuestro juicio, al así actuar _no_ cumplió cabalmente con su deber.

IV

Estamos conscientes del hecho que durante el juicio en su fondo del caso otro magistrado, luego de escuchar tanto la prueba de cargo como la presentada por la defensa, determinó que la aquí peticionaria efectivamente era culpable del delito imputado. Como expresáramos anteriormente, de ordinario _no_ intervendremos con la apreciación de la prueba que realiza el tribunal sentenciador a menos que se nos demuestre la

existencia de parte del referido foro primario de pasión, prejuicio, parcialidad o error manifiesto. <u>Pueblo</u> v. <u>Maisonave</u>, ante; <u>Pueblo</u> v. <u>Acevedo Estrada</u>, ante.

Una lectura de la transcripción de evidencia, obrante en el expediente, nos convence de que estamos ante una situación de "error manifiesto" en la apreciación de la prueba, de parte del tribunal sentenciador. La prueba desfilada resulta ser <u>abrumadora</u> respecto a que lo sucedido el 23 de mayo de 2000 <u>no</u> sucedió como lo relata la supuesta perjudicada Torres Mateo. <u>Pueblo</u> v. <u>Maisonave</u>, ante. Así quedó plenamente demostrado por el testimonio de varios testigos, objetivos y desinteresados, con conocimiento personal de los hechos.

Sometida la prueba al tenor del proceso analítico que dicta el imperativo de debido proceso de ley que consagra el Artículo II, Sec. 11, de nuestra Constitución, forzoso resulta concluir que procede la revocación del dictamen recurrido. Luego de haber evaluado detenidamente la prueba, <u>no</u> albergamos una convicción firme, esto es, esa satisfacción y tranquilidad de conciencia que debe prevalecer en el ánimo adjudicativo cuando se confirma una sentencia condenatoria. Ante tal incertidumbre, no podemos imprimirle un sello de corrección al fallo inculpatorio emitido por el foro de instancia.

Por tanto, si bien es cierto que este Tribunal, como norma general, se guía por el principio que confiere deferencia a la apreciación que de la prueba efectúa el foro sentenciador, resolvemos que, dadas las circunstancias antes descritas, procede que en el presente caso nos apartemos de la referida

norma. Ello así pues, un examen de la <u>totalidad de la prueba</u>
que tuvo ante sí dicho foro, revela que no existe base
suficiente para sostener la determinación de culpabilidad de
la aquí peticionaria. <u>Pueblo</u> v. <u>Cabán Torres</u>, ante.


                                      V

        La conclusión a la que llegamos, esto es, de que procede
revocar --por duda razonable-- la convicción decretada a nivel
de instancia contra la aquí peticionaria, <u>se sostiene aun</u>
<u>cuando entendiéramos que no debemos intervenir con la</u>
<u>apreciación que de la prueba desfilada hiciera el tribunal</u>
<u>sentenciador en el presente caso</u>. Veamos por qué.

        En referencia al delito específico por el cual la aquí
peticionaria resultó convicta, entendemos procedente y
pertinente hacer ciertos señalamientos.

        El Artículo 260 del Código Penal de Puerto Rico, 33
L.P.R.A. sec. 4521, dispone, en lo pertinente, que:

> Será sancionada con pena de reclusión que no
> excederá de seis (6) meses o multa que no excederá
> de quinientos (500) dólares o ambas penas a
> discreción del Tribunal toda persona que
> voluntariamente realizare cualesquiera de los
> siguientes actos:
>
> > a) Perturbare la paz o tranquilidad de
> >    algún individuo o vecindario, con
> >    fuertes e inusitados gritos, conducta
> >    tumultuosa u ofensiva o amenazas,
> >    vituperios, riñas, desafíos o
> >    provocaciones.
>
> [...]

Recientemente expresamos que para que se entienda infringido el Inciso (a) del precitado artículo de ley <u>no</u> basta con que se utilice "lenguaje indecoroso o grosero". <u>Pueblo</u> v. <u>Rodríguez Lugo</u>, res. el 9 de enero de 2002, 2002 T.S.P.R. 3. Resolvimos en el antes citado caso que para que una conducta se entienda constitutiva del delito de alteración a la paz, <u>es necesario que concurran dos elementos, a saber: el elemento objetivo y el subjetivo</u>. El <u>primero</u> de éstos se refiere a la naturaleza misma de la acción, la cual, para que sea considerada ofensiva, <u>tiene que ser de tal grado hiriente e irritante como para poder provocar una reacción violenta en una persona de sensibilidad ordinaria</u>. Por otro lado, el <u>elemento subjetivo</u> es aquél que atiende las consecuencias de la conducta ofensiva en la alegada víctima del delito; esto es, si en efecto se le perturbó la paz a la persona a quien se dirigió la referida conducta. Id.

Es necesario, en consecuencia, para que el delito de alteración a la paz se configure, que la persona perjudicada se encuentre en paz, <u>Pueblo</u> v. <u>De León Martínez</u>, ante, siendo la "paz" esa tranquilidad de la cual disfrutan los ciudadanos cuando impera el buen orden. <u>Pueblo</u> v. <u>Ruiz</u>, 29 D.P.R 74 (1921). Para que se entienda alterada la paz de una persona, no basta que ésta sienta un mero malestar por la conducta desplegada en su contra. <u>Pueblo</u> v. <u>Caro González</u>, 110 D.P.R 518 (1980). Tiene que haber una reacción violenta de parte de ésta o, cuando menos, debe la persona sentir una grave alarma e intranquilidad. <u>Pueblo</u> v. <u>Rodríguez Lugo</u>, ante.

Con este preludio en mente, nos compete examinar la prueba que tuvo ante sí el foro sentenciador; ello con el propósito de determinar si, como resolvió el referido tribunal y subsecuentemente confirmó el foro apelativo intermedio, la culpabilidad de la aquí peticionaria se probó más allá de duda razonable.

En nuestro criterio, la prueba que presentara el Estado, con el propósito de demostrar que la aquí peticionaria infringió las disposiciones del Inciso (a) del Artículo 260 del vigente Código Penal de Puerto Rico, resulta ser insuficiente como cuestión de derecho.

La decisión emitida por este Tribunal en Pueblo v. Rodríguez Lugo, ante, nos obliga a cuestionarnos si las expresiones "embustera y vieja ridícula" son de tal grado hirientes e irritantes como para causar, en una persona de sensibilidad ordinaria, una reacción violenta o un sentido de grave alarma.

Contestamos dicha interrogante en la negativa. Las palabras en cuestión, no cabe duda, son expresiones impropias y de mal gusto, capaces de causar malestar, pero ello así, sin más, no ostenta el grado de injuria necesario para que la expresión, desde un punto de vista objetivo y desde la perspectiva de una persona de sensibilidad ordinaria, pueda considerarse delictiva.

Este Tribunal, en Pueblo v. Ruiz, 29 D.P.R. 74 (1921) --citado con aprobación en Pueblo v. Rodríguez Lugo, ante-- resolvió que no cometía el delito de Alteración a la

Paz una persona --enfrascada en una discusión con un ex-amigo-- que profirió unas palabras soeces mucho más ofensivas, groseras, irritantes e hirientes que las de "embustera y vieja ridícula"[9].

De otra parte --y aunque resulte innecesaria la discusión, en vista de que no está presente en el caso de autos el elemento objetivo del delito-- estimamos prudente mencionar que, en el presente caso, el ministerio público tampoco logró demostrar que la Sra. Torres Mateo, querellante, gozaba de "paz o de un estado de tranquilidad" en el momento en que supuestamente fue lastimada y ofendida con las expresiones que le dirigió la aquí peticionaria. **Nótese, en primer lugar, que del propio testimonio de la perjudicada surge que ella comenzó a alterarse cuando notó que la Sra. Irizarry se mostró molesta y nerviosa al atribuirle la remoción de los documentos de la Asociación**. Es decir, su estado anímico **no** era representativo de lo que jurídicamente hemos definido como "paz". **Pueblo** v. **De León Martínez**, ante.

A lo anterior añadimos el hecho de que, para la fecha de los hechos, prevalecía una **atmósfera de malestar y rencor** entre los miembros de ambas entidades sindicales, y que, por otro lado, tal y como admitió la querellante, las partes aquí envueltas se habían visto involucradas, **previamente**, en disputas similares, relativas las mismas a sus afiliaciones sindicales.

---

[9] En dicho caso, las palabras proferidas fueron: "tú no eres más que un huele bicho".

En consecuencia, resulta inmaterial si la Sra. Torres Mateo reaccionó con violencia a las expresiones emitidas por la peticionaria Irizarry o si al menos sufrió, como requerimos en Rodríguez Lugo, ante, una grave alarma o intranquilidad. Esto así por cuanto, como hemos afirmado previamente, la prueba desfilada nos crea serias dudas con respecto a si la Sra. Torres Mateo disfrutaba de esa tranquilidad de la cual goza un ciudadano cuando impera el buen orden. Pueblo v. Ruiz, ante. Sin dudas, una sensación de grave alarma o intranquilidad presupone una evolución anímica, presupone un estado previo de paz. Por ende, está igualmente ausente el elemento subjetivo del delito de alteración a la Paz. La convicción decretada, repetimos, no puede prevalecer.

VI

Debe quedar claro que el curso decisorio que hoy seguimos no constituye licencia ni permiso para perpetuar este tipo de situaciones en los planteles de nuestro sistema de educación pública. Nuestra decisión está estrictamente ceñida a un contexto fáctico en el cual cierto comportamiento, aunque impropio, no alcanzó el nivel de la conducta delictiva imputada, por lo cual, en todo caso, debió ser atendido por los canales administrativos pertinentes.

Sin dudas, se trata de una situación bastante indeseable, y lamentable por demás, sobre todo cuando tomamos en cuenta el escenario en el cual ocurrió: una de las aulas de nuestro Sistema de Educación Pública, lugar donde debe imperar el

<u>orden, la concordia y la sana convivencia, valores éstos que</u> <u>no pueden ser menoscabados, ni siquiera por el fragor de la</u> <u>actividad sindical</u>.


                                VII

Por todo lo antes expuesto, se <u>revoca</u> la sentencia emitida por el Tribunal de Primera Instancia, subsecuentemente confirmada por el Tribunal de Circuito de Apelaciones, y, en consecuencia, se <u>absuelve</u> a la peticionaria, Liliana Irizarry Irizarry, del delito de Alteración a la Paz del cual fue convicta.

          Se dictará Sentencia de conformidad.



                   FRANCISCO REBOLLO LOPEZ
                        Juez Asociado
              EN EL TRIBUNAL SUPREMO DE PUERTO RICO




El Pueblo de Puerto Rico

     Recurrido

          vs.                    CC-2001-466      CERTIORARI

Liliana Irizarry Irizarry

     Acusada-peticionaria

SENTENCIA

En San Juan, Puerto Rico, a 10 de mayo de 2002

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Primera Instancia, subsecuentemente confirmada por el Tribunal de Circuito de Apelaciones, y, en consecuencia, se absuelve a la peticionaria, Liliana Irizarry Irizarry, del delito de Alteración a la Paz del cual fue convicta.**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurrió en el resultado sin opinión escrita. El Juez Asociado señor Corrada del Río disintió sin opinión escrita. El Juez Asociado señor Rivera Pérez emitió Opinión disidente.**

**Patricia Otón Olivieri
Secretaria del Tribunal Supremo**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Recurrido

         v.

                        CC-2001-466    Certiorari

Lilina Irizarry Irizarry

      Peticionaria

Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 10 de mayo de 2002.

**Este Tribunal resuelve revocar una sentencia emitida por el Tribunal de Circuito de Apelaciones confirmando la convicción y sentencia dictada por el Tribunal de Primera Instancia, después de emitir un fallo de culpabilidad contra la aquí peticionaria por la comisión del delito de alteración a la paz, tipificado en el inciso (a) del Artículo 260 de nuestro Código Penal. [10] Su evaluación y análisis del presente asunto parte de la premisa de que los tres (3) errores señalados**

---

[10] 33 L.P.R.A. sec. 4521 (a).

están íntimamente relacionados y, por ende, los discute en forma conjunta.

La Mayoría concluye que un examen integral y responsable de la transcripción de la prueba desfilada ante el Tribunal de Primera Instancia en el caso de autos "causa en nuestro ánimo una intranquilidad de conciencia, esto es, una duda razonable y fundada, respecto a si el Estado demostró, más allá de duda razonable, la culpabilidad de la peticionaria Liliana Irizarry".  Afirma que, después de realizar una lectura de la transcripción de la evidencia, concluyó que estamos ante una situación de error manifiesto en la apreciación de la prueba de parte del Tribunal de Primera Instancia.  Expresa, que la prueba desfilada resulta ser abrumadora respecto a que lo sucedido el día de los hechos, que genera la controversia de autos, no sucedió como lo relata la testigo de cargo, señora Migdalia Torres Pacheco.  Concluye que así quedó plenamente demostrado por el testimonio de varios testigos, objetivos y desinteresados, con conocimiento personal de los hechos.

La Mayoría expresa que sometida la prueba "al tenor del proceso analítico que dicta el imperativo de debido proceso de ley que consagra el Artículo II, Sec. 11 de nuestra Constitución, le es forzoso concluir que procede la revocación del dictamen recurrido".  Concluye, que "luego de haber evaluado detenidamente la prueba, no albergamos una convicción firme, esto es, esa satisfacción y tranquilidad de conciencia que debe prevalecer en el ánimo adjudicativo cuando se confirma una sentencia condenatoria".  Califica tal situación como una de incertidumbre que no le permite imprimirle un sello de corrección al fallo de culpabilidad emitido por el foro de primera instancia.  Más adelante la Mayoría expresa

que la prueba de cargo presentada por el Estado para sostener la culpabilidad de la acusada, aquí peticionaria, más allá de duda razonable, por la comisión del delito tipificado en el inciso (a) del Artículo 260 del Código Penal, <u>supra</u>, "resulta ser insuficiente como cuestión de derecho". **Concluye que las expresiones "embustera y vieja ridícula" no son de tal grado hirientes e irritantes como para causarle a una persona de sensibilidad ordinaria, una reacción violenta o un sentido de grave alarma. Califica tales expresiones como impropias y de mal gusto,** capaces de causar malestar, **pero que por sí solas no ostentan el grado de injuria necesario para que la expresión, desde un punto de vista objetivo y desde la perspectiva de una persona de sensibilidad ordinaria, pueda considerarse delictiva. Respetuosamente disentimos.**

**A tenor con los documentos que surgen de nuestro expediente, somos del criterio que todos los errores señalados como cometidos por el Tribunal de Primera Instancia y el Tribunal de Circuito de Apelaciones no pueden ser discutidos y analizados conjuntamente.**[11]

---

[11] Señalamiento de Errores

Erró el Honorable Tribunal al confirmar la determinación de no ha lugar a la moción de absolución perentoria oportunamente solicitada por la peticionaria.

Erró el Honorable Tribunal al confirmar que la denuncia tal cual redactada imputa la comisión de delito.

Erró el Honorable Tribunal al ni [sic] intervenir en la apreciación de la prueba testifical vertida durante el transcurso de la vista aún existiendo los elementos de excepción que le facultaban para ello y en su consecuencia resolver que:

1. se establecieron los elementos del delito;

2. mereció credibilidad el testimonio contradictorio de la testigo Migdalia Torres Mateo;

3. no darle peso alguno al testimonio de los testigos de defensa presentados;

La alegación de la parte peticionaria de que el pliego acusatorio (denuncia) no imputa delito, no fue atendida por el Tribunal de Circuito de Apelaciones. No consta del recurso presentado ante el Tribunal de Circuito de Apelaciones, ni del presente, copia de la denuncia presentada contra la acusada, aquí peticionaria, ante el Tribunal de Primera Instancia y que culminó con el fallo de culpabilidad, convicción y sentencia impuesta. Tampoco surge, de haberse presentado, en ambos recursos copia de la moción de desestimación presentada ante el Tribunal de Primera Instancia por la defensa, a tenor con la Regla 64 (a) de Procedimiento Criminal.[12] La prueba de cargo se presenta para probar que el acusado incurrió en conducta tipificada como delito, según imputada en el pliego acusatorio. De plantearse ante el Tribunal de Primera Instancia que el pliego acusatorio no imputa delito, declarada no ha lugar la desestimación solicitada por ese motivo, desfilada prueba de cargo para sostener la conducta imputada, recaído fallo de culpabilidad, pronunciada convicta la acusada y dictada la sentencia condenatoria, es procedente a nivel apelativo examinar tal pliego acusatorio para poder evaluar el error señalado como cometido por el primero.

I

El Artículo 260 del Código Penal de Puerto Rico, <u>supra</u>, dispone, en lo pertinente al asunto ante nos, lo siguiente:

> Será sancionada con pena de reclusión por un término que no excederá de seis (6) meses, pena de multa que no excederá de quinientos (500) dólares, o ambas penas a

---

4. validar la determinación de que no se estableció duda razonable en el transcurso de la vista;

5. al validar la determinación de que la prueba presentada por el Ministerio Público fue suficiente para rebatir la presunción de inocencia.

6.

[12] 34 L.P.R.A. Ap. II, R. 64 (a).

discreción del tribunal, toda persona que voluntariamente realizare cualesquiera de los siguientes actos:

(a) Perturbare la paz o tranquilidad de algún individuo o vecindario, con fuertes e inusitados gritos, conducta tumultuosa u ofensiva o amenazas, vituperios, riñas, desafíos o provocaciones.

...

El Artículo II, Sección 8, de la Constitución de Puerto Rico dispone sobre el derecho de toda persona a estar protegida por la ley contra ataques abusivos a su honra, a su reputación y a su vida privada y familiar.[13] Esta disposición constituye el principio bajo el cual se asienta la política pública formulada que tipifica como delito la conducta o expresiones antes descritas.

La modalidad de alteración a la paz antes indicada consiste en perturbar la paz o tranquilidad de un individuo a base de gritos fuertes e inusitados, conducta tumultuosa u ofensiva, amenazas, vituperios, riñas, desafíos o provocaciones.

El acto de perturbar la paz o tranquilidad de un individuo con riñas o palabras de riña, se refiere a aquellas palabras que por el simple hecho de ser proferidas infligen daño o tienden a causar una inmediata alteración a la paz.[14] Dichas palabras tienen que estar dirigidas a por lo menos una persona. Las palabras de riña se refieren a aquel tipo de palabras que una persona de inteligencia común entendería que pueden ocasionar el que una persona promedio o de sensibilidad ordinaria reaccione violentamente en respuesta a habérselas proferido.[15]

---

[13] Documentos Históricos, 1 L.P.R.A. Art. II, Sec. 8, pág. 301.

[14] D. Nevares Muñiz, Código Penal de Puerto Rico Revisado y Comentado, Ed. 2001, Instituto para el Desarrollo del Derecho, Inc., pág. 500; Chaplinsky v. New Hampshire, 315 US 568 (1942), según citado en Pueblo v. Caro González, 110 D.P.R. 518, 525 (1980).

[15] Nevares Muñiz, op. cit.; Pueblo v. Ortiz Díaz, 123 D.P.R. 865 (1989); Pueblo v. Caro González, supra, pág. 525.

Las expresiones ofensivas que caen dentro del ámbito de la conducta delictiva antes indicada es aquella que causa disgusto, que produce dolor u origina sensaciones desagradables.[16] Hemos definido vituperios como aquellos que exponen injustamente a una persona a desprecio o vergüenza, que le causa afrenta o deshonra, o que le adscribe el carácter de vicioso o indigno.[17] Las expresiones ofensivas o vituperios a una persona tienen que ser hirientes e irritantes, a tal grado que sean capaces de provocar una respuesta violenta (de riña).[18]

Recientemente nos expresamos sobre este asunto en Pueblo v. Rodríguez Lugo.[19] Allí dijimos que se configura el delito de alteración a la paz cuando se haya desplegado alguna conducta ofensiva o de provocación, y que en efecto se haya perturbado la paz o la tranquilidad de alguna persona. La paz de algún individuo queda perturbada cuando la sensación de seguridad y tranquilidad que toda persona siente al amparo de la ley es invadida. No es necesario, pues, que la víctima del delito haya en efecto reaccionado con violencia para que se estime que se le perturbó la paz.[20]

Para que un acto o expresión sea ofensivo tiene que ser tan hiriente e irritante que pueda causar que una persona de sensibilidad ordinaria pueda reaccionar violentamente en respuesta a éste. Es decir, que sea tan injurioso y ofensivo que pueda provocar a una persona común reaccionar con violencia.[21]

---

[16] Nevares Muñiz, op. cit.; Pueblo v. Ways, 29 D.P.R. 334, 337 (1921).

[17] Íd.

[18] Íd.

[19] Res. el 9 de enero de 2002, 2002 TSPR 3, 156 D.P.R. ___ (2002), 2002 J.T.S. 9.

[20] Íd., pág. 631.

En **Pueblo v. Rodríguez Lugo**, _supra_, expresamos, además, que a la luz del principio de legalidad que rige el derecho penal es menester conceptualizar los actos ofensivos del mismo modo que hemos tratado el lenguaje ofensivo, en vista de que ambas modalidades del delito surgen concretamente de una misma disposición estatutaria. Ambas están proscritas por el inciso (a) del Artículo 260 del Código Penal, _supra_.

Para que la acción en cuestión pueda considerarse criminal, deben estar presentes dos (2) elementos. **El** elemento objetivo, **que es determinar si el lenguaje y la acción realizada es ofensiva, es decir que sea tan hiriente e irritante que pueda causarle a una persona de sensibilidad ordinaria reaccionar con violencia al ser sometido a ella. Para que el acto y lenguaje en cuestión pueda considerarse penalmente ofensivo, es necesario examinar el contexto circunstancial en que ocurrió para así poder apreciar si cualquier persona de sensibilidad ordinaria hubiese sido capaz de reaccionar con violencia. El** elemento subjetivo, **que consiste en determinar que en efecto se haya perturbado la paz de la alegada víctima del delito.**[22]

Para que el delito de alteración a la paz se configure, es necesario que la persona perjudicada se encuentre en paz. Por "paz" se entiende la tranquilidad de que gozan los ciudadanos cuando reina el buen orden.[23] Para que se entienda alterada la paz de una persona, no basta que ésta sienta un mero malestar con la expresión o conducta desplegada en su contra, sino que tienen que ser capaces de provocar

---

[21] Íd.

[22] Íd., pág. 635.

[23] Pueblo v. De León Martínez, 132 D.P.R. 746, 767 (1993).

una respuesta violenta (de riña), por resultar ofensivas, hirientes e irritantes.[24]

La primera testigo de cargo, señora Migdalia Torres Mateo, declaró ante el Tribunal de Primera Instancia que el 23 de mayo de 2000 se dirigió, a eso de las 7:20 a 7:30 de la mañana, a la Escuela John F. Kennedy, en calidad de Coordinadora de Distrito de la Federación de Maestros. Tenía el propósito de visitar esa escuela para descargar parte de sus funciones en tal capacidad, en torno a ofrecer información a los maestros sobre la Ley Núm. 45 de 25 de febrero de 1998, conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico.[25] En ese mismo mes y año había transcurrido todo el proceso y etapa de la campaña entre la Asociación de Maestros y la Federación de Maestros, que aspiraban a obtener la confianza de los maestros para representarlos en forma exclusiva frente al Departamento de Educación. Salió victoriosa de ese proceso la Federación de Maestros. La señora Torres Mateo estuvo involucrada en la campaña de la Federación sobre el Plan de Salud. Expresó que al llegar a la escuela se encontró a unos compañeros e inmediatamente preguntó por la Directora de la Escuela, señora Marta De Jesús, y le dijeron que no había llegado. Por existir dudas entre el personal clasificado de la escuela sobre el plan de salud, ella comenzó a orientarlos y a contestar sus preguntas. Durante el contrainterrogatorio declaró que recogió varias renovaciones del plan de salud.

Recibió petición de la señora Carmen Cabrera, maestra de esa escuela, para que se dirigiera a su salón de clases, porque ésta interesaba hacerle una consulta relacionada con un problema que ella

---

[24] Pueblo v. Caro González, supra, pág. 530.

tenía con la Directora de la escuela. Terminó de orientar al personal clasificado y se dirigió a la oficina de la Directora de la escuela para colocar en el tablón de edictos, que se encuentra en la parte de esa oficina donde está ubicada la secretaria, copia de un dictamen judicial relacionado con un procedimiento iniciado con la presentación de una demanda por la Asociación de Maestros contra el Departamento de Educación y la Federación de Maestros, donde se alegaba, entre otras cosas, que la Asociación de Maestros tenía derecho a utilizar el tablón de edictos de las escuelas. Por virtud de dicho dictamen, se desestimó la demanda presentada por la Asociación de Maestros contra el Departamento de Educación y la Federación de Maestros. Declaró que colocó copia de dicho documento en el tablón de edictos con el propósito de brindarle información y orientación a los maestros, por existir desinformación entre ellos relacionado con ese tema, y se retiró. No había nadie presente en la oficina de la Directora cuando colocó copia de dicho documento en el tablón de edictos. Posteriormente se dirigió al salón de clases de la maestra, señora Carmen Cabrera. Cerca de las 8:00 de la mañana se despidió de la señora Cabrera, expresándole que regresaría luego a hablar con la Directora de la escuela relacionado con el asunto que le planteara.

Cuando se disponía a retirarse, un conserje le indicó que la Directora de la escuela le quería hablar; que pasara a su oficina. Cuando entró a la referida oficina se encontraba allí la señora Lilina Irizarry, y pudo percatarse que estaba "molesta y nerviosa". La señora Irizarry, quien es simpatizante de la Asociación de Maestros, le imputó haber retirado del tablón de edictos una propaganda de esa organización. Ella le replicó que no sabía nada de eso. Hasta ese

---

[25] 3 L.P.R.A. sec. 1451 _et seq._

momento manifestó no sentirse molesta.  Solicitó de la Directora de la Escuela que orientara a la señora Irizarry sobre las directrices impartidas por el Secretario de Educación sobre el asunto.  Acto seguido, la señora Irizarry arrancó del tablón de edictos el documento que había fijado allí la señora Torres Mateo, en un estado que describe la testigo como "bien molesta", gesticulando hacia ella con el documento en la mano.  En ese momento ella se comenzó a sentir alterada.  Inmediatamente, y durante el manoteo con el documento en su cara, le dijo "embustera" y poco después "vieja ridícula".  Todo esto frente a la Directora de la escuela y otras personas, miembros del personal de esa escuela.  Declaró sentirse ofendida y lastimada y que le expresó "si tu sigues en esa actitud de agresividad y de ofensa yo voy a llamar a la Policía".  Expresó, además, que le había advertido en una ocasión anterior a la Directora de la escuela que la señora Irizarry mantenía e insistía en conducta y lenguaje agresivo hacia su persona, y que era a ella a quien le correspondía llamar a la Policía.  Que envió una carta al Director Regional del Departamento de Educación sobre el asunto.  Que la señora Irizarry mantenía una actitud agresiva para con ella durante el incidente antes relatado, como parte de las controversias que surgieron como producto de la campaña, y porque en ese momento creía que ella había retirado una propaganda escrita de la Asociación de Maestros del tablón de edictos.  Acudió al Cuartel de la Policía y fue atendida por el policía Félix Espada.

Durante el contrainterrogatorio, la señora Torres Mateo aclaró que la señora Irizarry le dijo "embustera", refiriéndose a la decisión de la honorable Zadette Bajandas, Juez Superior, desestimando la demanda que había incoado la Asociación de Maestros contra la Federación de Maestros y el Departamento de Educación.

Aclaró que le dijo "embustera" dentro de la oficina, y cuando se dispuso a retirarse para no discutir con ella le dijo "vieja ridícula", y la continuó insultando frente a todo el personal. Especificó que acompañó ese lenguaje ofensivo al manoteo ya descrito, con el documento que arrancó del tablón de edictos. Todo esto en alta voz y en actitud agresiva hacia ella.

Como segundo testigo de cargo, el Ministerio Público sentó al policía municipal Félix Espada. Éste declaró que recibió la querella presentada por la señora Torres Mateo y procedió a investigar el asunto. Que fue a la Escuela John F. Kennedy a investigar los hechos y entrevistó a la señora Lilina Irizarry. Expresó que la señora Torres Mateo había sido su maestra de escuela. Entrevistó en la escuela a varias de las personas presentes, incluyendo a la señora Lilina Irizarry. Expresó que esta última le expuso su versión de los hechos. Que él entendió como correcta la versión de la señora Torres Mateo.

El policía Espada declaró que cuando fue a la escuela entrevistó a la señora Lilina Irizarry, y ésta le indicó que quien había alterado la paz era la señora Torres Mateo, porque le había removido un documento que ella tenía fijado en un tablón de edictos. No obstante, a preguntas del policía, la señora Irizarry indicó que no la había visto hacerlo, pero que la secretaria de la Directora de la escuela sí la había visto hacerlo. El policía Espada testificó que entrevistó a la secretaria de la Directora de la escuela, y ésta negó que hubiera observado tal incidente.

Declaró el policía Espada que entrevistó a la señora Torres Mateo con motivo de la querella presentada y ésta le indicó que la señora Irizarry le había dicho "embustera" y "vieja ridícula", mientras le manoteaba la cara frente a otros maestros. Expresó que

durante la investigación entrevistó a esos otros maestros señalados por la señora Torres Mateo que presenciaron el incidente, y éstos le indicaron que no vieron nada.  Sobre estos hechos afirmó haber entrevistado a la señora Marisol Burgos, secretaria de la Directora de la escuela y ésta le indicó que no había visto nada de lo que la señora Torres Mateo le había indicado que había ocurrido en la oficina de la Directora de la escuela.[26]

Concluida la prueba de cargo, la defensa presentó varios testigos.  En primer lugar testificó la señora Marisol Burgos, quien declaró ser la secretaria de la Directora de la Escuela John F. Kennedy.  Expresó que su oficina es una antesala de la oficina de la Directora de la escuela.  Indicó que el tablón de edictos en cuestión estaba ubicado al lado de su escritorio.  Declaró que ella vio a la señora Torres Mateo remover un documento del tablón de edictos, que identificó como un recorte de periódico relacionado con la Asociación de Maestros, y colocó otro en su lugar.  Expresó que la Directora de la escuela iba entrando a su oficina en ese momento. Ofreció una versión de los hechos distinta a la vertida por la señora Torres Mateo.  Declaró que le informó a la señora Irizarry que la señora Torres Mateo había removido su propaganda y que quien se alteró y manoteó con los papeles en la mano fue la señora Torres Mateo, dirigiéndose a la señora Irizarry.  Negó que la señora Irizarry le hubiera dicho "embustera" y "vieja ridícula" a la señora Torres Mateo.  Negó, además, que el policía Espada la hubiera entrevistado.

---

[26] Del testimonio que vertió el policía Espada ante el Tribunal de Primera Instancia sobre su investigación no nos presenta duda alguna que actuó correcta y razonablemente al presentar la denuncia por alteración a la paz contra la señora Lilina Irizarry y no contra la señora Migdalia Torres Mateo.  De la prueba recopilada por éste surge la "scintilla" de evidencia necesaria para determinar causa probable para arresto contra la señora Irizarry por la comisión del delito de alteración a la paz.

Expresó que el policía preguntó en su presencia, en ocasión de acudir a la Escuela John F. Kennedy para investigar sobre los hechos, si habían testigos de lo ocurrido, y que ella no contestó y continuó haciendo sus tareas.

**Como segundo testigo declaró el señor Wilfredo Márquez Colón, quien expresó ser maestro de matemáticas en la Escuela John F. Kennedy y representante alterno de la Federación de Maestros. Declaró que el día de los hechos trató de subsanar un altercado que había entre la señora Lilina Irizarry y la señora Migdalia Torres Mateo. Que presenció tal incidente cuando se bajó de su automóvil. Expresó no tener conocimiento de incidente alguno previo dentro de la escuela o en la oficina de la Directora.**

**Como tercer testigo de defensa declaró la señora Marta Leticia De Jesús Rosa, quien a la fecha de los hechos era Directora de la Escuela John F. Kennedy.** Declaró que escuchó una conversación fuera de su privado y en la parte de su oficina donde está ubicada su secretaria. Que la conversación era entre la señora Torres Mateo y la señora Irizarry, y se estaba sosteniendo en un tono de voz alto. Que apercibió a las personas envueltas sobre la disciplina a observarse en un plantel escolar. Expresó no haber escuchado las palabras "embustera" y "vieja ridícula" en boca de ninguna de esas personas.[27]

**Se estipuló la prueba de reputación a ofrecerse por la acusada. Los testigos de defensa restantes se pusieron a la disposición del Ministerio Público para ser entrevistados, porque no iban a ser utilizados.**

---

[27] De su testimonio no surge que haya visto que la señora Torres Mateo hubiera removido la propaganda de la Asociación de Maestros que había

## II

En nuestro ordenamiento la culpabilidad de una persona acusada de un delito tiene que ser demostrada con prueba suficiente en derecho y más allá de toda duda razonable. Esto responde a las garantías constitucionales, a la presunción de inocencia y a un debido proceso de ley.[28]

Es al Estado a quien le corresponde presentar evidencia suficiente y demostrar la culpabilidad del acusado más allá de toda duda razonable.[29] A los fines de condenar a un acusado, la prueba necesaria a ser ofrecida por el Ministerio Fiscal y admitida, además de suficiente, tiene que ser prueba satisfactoria, que produzca certeza o convicción moral en una conciencia exenta de preocupación.[30]

El Ministerio Fiscal no cumple con el requisito de probar la culpabilidad de un acusado más allá de duda razonable, presentando prueba que meramente sea suficiente, esto es, que verse sobre todos los elementos del delito imputado. Se le requiere, además, que la evidencia presentada, además de sostener prima facie los elementos del delito, tiene que ser satisfactoria, es decir, que produzca certeza y convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido.[31]

La apreciación que hace un juzgador de la evidencia desfilada durante un proceso judicial criminal es una cuestión mixta de hecho y de derecho. Por eso, el análisis que de la prueba presentada se

_____

fijado en el tablón de edictos, tal y como lo declaró su secretaria, señora Marisol Burgos.

[28] Pueblo v. De León Martínez, 132 D.P.R. 746 (1993).

[29] Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991).

[30] Pueblo v. Carrasquillo, 102 D.P.R. 545 (1974).

[31] Íd.; Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454 (1988).

realiza "pone en movimiento, además de la experiencia del juzgador, su conocimiento del Derecho para así llegar a una solución justa de la controversia".[32] Es por ello que la determinación que realiza el juzgador de los hechos a nivel del foro de primera instancia, a los efectos de que la culpabilidad del imputado del delito ha quedado establecida más allá de duda razonable, es una que es revisable en apelación "como cuestión de derecho".[33]

Es norma jurisprudencial reiterada que esa determinación de culpabilidad que hace el juzgador de los hechos a nivel de primera instancia, es merecedora de gran deferencia por parte del tribunal apelativo. El fundamento o base en que se apoya la referida norma es obvio: dicho juzgador es el que, de ordinario, está en mejor posición para aquilatar la prueba testifical, ya que fue el que escuchó y vió declarar a los testigos.[34]

Este Tribunal ha expresado en reiteradas ocasiones que, de ordinario, no intervendremos con el veredicto condenatorio emitido por un jurado o el fallo de culpabilidad de un juez, en ausencia de pasión, prejuicio, parcialidad o error manifiesto en la apreciación que de la prueba fue realizada.[35]

Todo lo anteriormente expresado no significa que la determinación de culpabilidad realizada por el juzgador de los hechos constituye una barrera insalvable. Cuando surge prima facie de la prueba presentada los elementos del delito imputado, pero la apreciación de esa prueba se distancia de la realidad fáctica o es

---

[32] Íd.

[33] Íd.

[34] Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49 (1991).

inherentemente imposible o increíble, entonces la intervención del tribunal apelativo es necesaria y procedente. Las determinaciones que hace el juzgador de los hechos no deben ser sustituidas por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación.[36]

¿Sostiene prima facie la prueba presentada por el Ministerio Público y admitida por el Tribunal de Primera Instancia los elementos del delito de alteración a la paz tipificado en el inciso (a) del Artículo 260 del Código Penal de Puerto Rico, supra? La contestación es en la afirmativa.

La prueba insuficiente es aquella que aún de ser creída por el juzgador de los hechos, no es suficiente para establecer los elementos necesarios de responsabilidad criminal. Si de la prueba de cargo presentada existe una "scintilla" de evidencia sobre todos los elementos del delito imputado, el Estado ha presentado un caso prima facie contra el acusado.[37] Del cuadro fáctico que exhibe el caso de autos se desprende claramente que el Estado presentó prueba que sostiene un caso prima facie contra la acusada por infringir el inciso (a) del Artículo 260 del Código Penal, supra. Veamos.

Surge de la transcripción de la evidencia que los hechos de este caso constituyen un episodio entre varias controversias que se suscitaron entre la señora Lilina Irizarry y la señora Migdalia Torres Mateo, como consecuencia del proceso y etapa de la campaña entre la Asociación de Maestros y la Federación de Maestros para

---

[35] Pueblo v. Rivero, Lugo y Almodóvar, supra; Pueblo v. Borrero Robles, 113 D.P.R. 387 (1982); Pueblo v. Millán Meléndez, 110 D.P.R. 171 (1980); Pueblo v. López Pérez, 106 D.P.R. 584 (1977).

[36] Pueblo v. Acevedo Estrada, res. el 19 de enero de 2000, 2000 TSPR 8, 150 D.P.R. ____ (2000), 2000 J.T.S. 22.

obtener la confianza de los maestros para representarlos en forma exclusiva frente al Departamento de Educación. De la prueba de cargo ofrecida y admitida surge que la señora Irizarry mantenía e insistía en una actitud agresiva hacia la señora Torres Mateo, como consecuencia de esa controversia.

La Asociación de Maestros de Puerto Rico presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda contra la Federación de Maestros y el Departamento de Educación donde, entre otras cosas, alegaba que tenía el derecho a utilizar el tablón de edictos de las escuelas. Ese Tribunal dictaminó por escrito en forma desfavorable a la Asociación de Maestros. Ese era el documento al que se refirió la testigo de cargo, señora Torres Mateo, como el que ella había fijado copia en el tablón de edictos para el conocimiento e información de los maestros de esa escuela.

Somos del criterio que de la prueba de cargo presentada surge que la señora Irizarry incurrió en conducta hablada y no hablada, constitutiva esta última de acciones y de gestos, de la cual se desprenden vituperios, ofensas y una actitud de provocación de su parte, dirigida esa conducta a perturbar la paz y tranquilidad de la señora Torres Mateo. El Estado sostuvo prima facie con su prueba que los actos y el lenguaje utilizado por la señora Irizarry expuso injustamente a la señora Torres Mateo al desprecio de las personas allí presentes. Esa prueba tiende a sostener que tal conducta tuvo el propósito de señalarla como una persona indigna y producir vergüenza y deshonra a una maestra de escuela, la señora Torres Mateo. Esa prueba fue presentada para establecer que la paz y tranquilidad de la señora Torres Mateo, que se encontraba en gestiones gremiales

---

[37] E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, 1995, Vol. II, pág. 304; Pueblo v. Rivero, Lugo y

**oficiales válidas y propias en una escuela, quedó perturbada cuando la sensación de seguridad y tranquilidad que una persona razonable siente al realizar tal gestión al amparo de la ley es invadida. No es necesario que la prueba de cargo evidencie que la señora Torres Mateo reaccionó con violencia para sostener prima facie que se le perturbó la paz, bajo las presentes circunstancias.**

No nos presenta duda alguna que la prueba de cargo sostiene prima facie que el lenguaje y las acciones observadas por la señora Irizarry fueron ofensivas, hirientes e irritantes, a tal punto que pueden ocasionar que cualquier maestro de escuela de sensibilidad ordinaria hubiese sido capaz de reaccionar con violencia, de encontrarse que fue insultado, deshonrado y señalado como indigno al realizar una gestión oficial como representante gremial, con derecho a estar en el sitio donde le fue perturbada su paz y tranquilidad.

**La prueba de cargo tiende a sostener que la señora Torres Mateo se encontraba en un estado de paz y tranquilidad hasta el momento que es requerida y entra en la oficina de la Directora de la escuela, donde es objeto y víctima de las acciones y el lenguaje de la señora Irizarry. El primer error señalado no fue cometido.**

**¿Sostiene la prueba de cargo presentada la culpabilidad de la acusada más allá de duda razonable por la comisión del delito de alteración a la paz tipificado en el inciso (a) del Artículo 260 del Código Penal, <u>supra</u>? La contestación es en la afirmativa.**

**La insuficiencia de la prueba es algo muy distinto a la prueba conflictiva o contradictoria. Cuando se presenta prueba de todos los elementos esenciales del delito y tal prueba es contradicha, realmente no se trata de un caso de prueba que no es suficiente para imponer responsabilidad criminal, por no establecer prima facie la**

<u>Almodóvar</u>, <u>supra</u>.

presencia de todos los elementos del delito. Estando establecido prima facie por el Estado el delito imputado y presentada prueba que la contradice, el llamado a resolver tal conflicto es el juzgador de los hechos.[38]

En el caso de autos fue presentado el testimonio de la señora Torres Mateo como prueba de cargo que sostiene prima facie, como hemos expuesto previamente, la comisión del delito de alteración a la paz tipificado en el inciso (a) del Artículo 260 del Código Penal, supra. La defensa presentó prueba testifical que contradice la misma, inclusive el testimonio de la señora Marisol Burgos contiene una versión totalmente distinta a la ofrecida por la señora Torres Mateo. El Tribunal de Primera Instancia le impartió credibilidad a la prueba de cargo al dirimir el conflicto de la prueba ofrecida por las partes y admitida como evidencia. Entendemos que no incurrió el Tribunal de Primera Instancia en error manifiesto en la apreciación de la prueba, ni mucho menos actuó con pasión, prejuicio o parcialidad. Entiendo que actuó correctamente al encontrar que la prueba de cargo demostró más allá de duda razonable la comisión del delito tipificado en el inciso (a) del Artículo 260 del Código Penal, supra. Veamos.

Hemos expresado, en reiteradas ocasiones, que no intervendremos con un fallo inculpatorio emitido por un Juez de primera instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba presentada y admitida. La responsabilidad de demostrar que es procedente, como cuestión de derecho, la intervención con el fallo emitido a nivel de primera instancia recae sobre el apelante ante el Tribunal de Circuito de Apelaciones y posteriormente ante este Tribunal, de ser necesario.[39]

---

[38] Chiesa Aponte, op. cit., págs. 304-307.

La señora Burgos ofreció un testimonio que contradecía el vertido por la señora Migdalia Torres Mateo sobre lo ocurrido el día de los hechos y el vertido por el policía Félix Espada sobre sus hallazgos durante la investigación que realizara como consecuencia de la querella presentada por la señora Torres Mateo. La Directora de la escuela, señora Marta Leticia De Jesús Rosa, testificó que no vio nada de lo relatado por la testigo de cargo, señora Migdalia Torres Mateo, y por la testigo de defensa, señora Marisol Burgos, su secretaria.

De la prueba desfilada y admitida surge que las personas que la señora Torres Mateo informó que habían presenciado el incidente eran compañeros de trabajo de la señora Lilina Irizarry, maestros todos de la Escuela John F. Kennedy. Esas son las personas que el policía Espada testificó que entrevistó y resultaron "ciegos y sordos".

Establecido por el Estado en el caso de autos un caso prima facie de alteración a la paz, no encontramos que la apreciación de la prueba realizada por el Tribunal de Primera Instancia se distancie de la realidad fáctica o que la versión de los testigos de cargo sea inherentemente imposible o increíble. Concluimos, que el apelante ante el Tribunal de Circuito de Apelaciones, y aquí peticionario, no ha colocado a este Tribunal en posición de intervenir con la apreciación de la prueba realizada por el Tribunal de Primera Instancia a base de excepción y como cuestión de derecho, al principio general que el juzgador de hechos es el que, de ordinario, está en mejor posición para aquilatar la prueba testifical, ya que fue el que escuchó y vio declarar a los testigos.

---

[39] Pueblo v. Rivero, Lugo y Almodóvar, supra.

Concluimos que la prueba de cargo desfilada y admitida no sólo es suficiente como cuestión de derecho, sino que sostiene más allá de duda razonable que la acusada, aquí peticionaria, incurrió en actos y conducta agresiva e hizo uso de lenguaje ofensivo y palabras que eran hirientes e irritantes, y en conjunto constituían una provocación y una afrenta a la honra y dignidad de la señora Torres Mateo como maestra, en frente de otras personas, maestros la mayoría de ellos, que le causó un sentido de grave alarma y una reacción defensiva, constitutiva de retirarse del lugar y acudir al Cuartel de la Policía.  Esa prueba de cargo ofrecida y admitida fue una satisfactoria, que produce en un ánimo no prevenido y en una conciencia exenta de preocupación la certeza y convicción moral necesaria para concluir en la forma y manera que lo hizo el Tribunal de Primera Instancia.

No compartimos el criterio de la Mayoría, que de la transcripción de la prueba surge que la determinación del foro de primera instancia estuvo apoyada solo sobre las expresiones "embustera" y "vieja ridícula" para concluir sobre la comisión del delito de alteración a la paz, más allá de duda razonable.  El tercer error señalado no fue cometido.

### III

¿Tenía que atender el Tribunal de Circuito de Apelaciones el segundo error que le fue señalado, a los efectos de que el pliego acusatorio no imputaba el delito tipificado en el inciso (a) del Artículo 260 del Código Penal, supra, en forma separada de los demás errores también señalados?  La contestación es en la afirmativa.

El desfile y admisión de prueba de cargo suficiente para establecer prima facie los elementos de un delito, según tipificado en nuestro Código Penal, y satisfactoria, como cuestión de hecho y

de derecho, para sostener la comisión de tal delito, no subsana los defectos sustanciales de un pliego acusatorio insuficiente, que no imputa todos los elementos del delito según tipificado, una vez es pronunciada culpable y declarada convicta la persona acusada de tal delito y de emitida la sentencia condenatoria.

La Regla 196 de Procedimiento Criminal[40] y las Reglas 26 y 28 del Reglamento del Tribunal de Circuito de Apelaciones[41] no disponen de requisito alguno dirigido al apelante ante el Tribunal de Circuito de Apelaciones para incluir junto con su escrito de apelación ni su alegato copia de documento alguno de los autos originales del Tribunal de Primera Instancia.

Cuando es señalado ante el Tribunal de Circuito de Apelaciones un error en un recurso de apelación criminal como el presente, o sea, constitutivo de que el Tribunal de Primera Instancia incidió al considerar y resolver que la denuncia formulada ante sí era una que imputa delito, el primero tiene la obligación de considerar, atender y resolver lo planteado por el apelante, por ser el recurso de apelación uno compulsorio y obligatorio para ese Tribunal.[42]

Para el Tribunal de Circuito de Apelaciones poder cumplir con tal cometido, la Regla 199 de Procedimiento Criminal[43] dispone lo siguiente:

> **Salvo lo que más adelante se dispone,** las apelaciones se ventilarán con vista de los documentos originales que obren en autos **y de la exposición o transcripción de la prueba oral,** los que constituirán el expediente de apelación. **(Énfasis nuestro.)**

---

[40] 34 L.P.R.A. Ap. II, R. 196.

[41] 4 L.P.R.A. Ap. XXII-A, R. 26 y R. 28.

[42] Véase Exposición de Motivos de la Ley de la Judicatura de Puerto Rico de 1994; Regla 193 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 193.

[43] 34 L.P.R.A. Ap. II, R. 199.

La Regla 203 de Procedimiento Criminal[44] prescribe, a esos efectos, lo siguiente:

> **Después de haberse presentado el escrito de apelación, y dentro de los términos prescritos en la Regla 210,** el secretario del tribunal apelado remitirá al Tribunal de Circuito de Apelaciones todos los documentos originales del proceso objeto de la apelación, excepto aquellos cuya omisión se hubiere convenido por las partes mediante estipulación escrita unida a los autos. El secretario del tribunal apelado unirá a dichos documentos una certificación que los identifique adecuadamente. **(Énfasis nuestro.)**

Añade la Regla 205 de Procedimiento Criminal,[45] en lo pertinente, lo siguiente:

> **Los escritos y documentos originales se unirán en uno o más volúmenes y las páginas se numerarán consecutivamente. Se preparará un índice completo independientemente o como parte de la certificación de identificación a que se refiere la Regla 203.**

La Regla 206 de Procedimiento Criminal[46] expresa sobre el tema lo siguiente:

> No será necesaria la aprobación del expediente de apelación por el tribunal apelado. **Pero si surgiere alguna discrepancia respecto a si el expediente refleja fielmente lo ocurrido en el tribunal apelado, la cuestión se someterá a dicho tribunal, el cual resolverá la controversia y conformará el expediente a la verdad. Si por error o accidente se omitiere o se relacionare equivocadamente alguna porción del expediente, de importancia para cualquiera de las partes, éstas mediante estipulación, o el tribunal apelado, antes o después de enviarse el expediente al Tribunal de Circuito de Apelaciones, o el propio Tribunal de Circuito de Apelaciones, a solicitud de parte o a instancia propia, podrá ordenar que se cubra la omisión o que se corrija la aserción errónea y si fuera necesario que se certifique o se envíe por el secretario del tribunal apelado un expediente suplementario. Cualquier otra cuestión relacionada con el contenido y la forma del expediente deberá plantearse al Tribunal de Circuito de Apelaciones. (Énfasis nuestro.)**

---

[44] 34 L.P.R.A. Ap. II, R. 203.

[45] 34 L.P.R.A. Ap. II, R. 205.

Por último, la Regla 210 de Procedimiento Criminal[47] dispone lo siguiente:

> El expediente de apelación provisto en las Reglas 199, 203, 205, 206 y 207 deberá archivarse en el Tribunal de Circuito de Apelaciones dentro de los treinta (30) días a partir de la fecha de la presentación del escrito de apelación, **excepto que cuando hubiere más de una apelación interpuesta contra la sentencia por dos o más acusados apelantes, el tribunal apelado podrá fijar el término para dicho archivo, que en ningún caso será menor del término antes expresado.** En todos los casos, el tribunal apelado, en el ejercicio de su discreción, con o sin moción o notificación al efecto, podrá prorrogar el término para el archivo del expediente de apelación por un período no mayor de sesenta (60) días adicionales. Cualquier prórroga ulterior sólo podrá concederse por causa justificada, la cual se hará constar en la orden concediendo la prórroga. Copia de esa orden deberá ser notificada al Tribunal de Circuito de Apelaciones. **(Énfasis nuestro.)**

**El Tribunal de Circuito de Apelaciones estaba en la obligación de atender y resolver el segundo error señalado por el apelante, a los efectos de que el Tribunal de Primera Instancia incidió al resolver que la denuncia imputaba delito, con vista de los documentos originales que obran en autos, y que junto a la transcripción de la prueba oral realizada constituyen el expediente de apelación ante el Tribunal de Circuito de Apelaciones. De no haberse remitido por el Tribunal de Primera Instancia los autos originales, a tenor con lo dispuesto en las Reglas 203 y 210, _supra_, el Tribunal de Circuito de Apelaciones estaba obligado a ordenarle al Tribunal de Primera Instancia tal remisión y estaba impedido de disponer finalmente del recurso ante sí, por no estar perfeccionado el recurso cuando dispuso de él, pues no estaba en posición de atender y resolver el segundo error señalado.[48]**

---

[46] 34 L.P.R.A. Ap. II, R. 206.

[47] 34 L.P.R.A. Ap. II, R. 210.

[48] En Hernández v. San Lorenzo Const., res. el 20 de febrero de 2001, 2001 TSPR 18, 153 D.P.R. ___ (2001), 2001 J.T.S. 22, expresamos en un

La Regla 64 (a) de Procedimiento Criminal, <u>supra</u>, dispone lo siguiente:

> La moción para desestimar la acusación o la denuncia, o cualquier cargo de las mismas sólo podrá basarse en uno o más de los siguientes fundamentos:

> (a) Que la acusación o denuncia no imputa un delito.
>    ...

Este fundamento de desestimación implica que, admitido como cierto lo alegado en el pliego acusatorio (denuncia o acusación) no se configura o satisface tipo penal alguno bajo los estatutos penales vigentes en Puerto Rico. Aunque no tiene que tratarse del mismo delito invocado en la acusación, si el tribunal estima que la acusación imputa un delito distinto al pretendido por el Ministerio Público hay que tener en cuenta la relación entre el delito pretendido por el fiscal y el delito que a juicio del tribunal se imputa en la acusación. Si se trata de delito distinto, no incluido en el que se pretendía imputar, puede surgir un problema de prescripción o de que no se determinó causa probable para el arresto o para acusar por el delito correcto, lo que constituyen causas independientes de desestimación.[49]

Al evaluar la moción de desestimación por este fundamento, el tribunal ha de tomar en cuenta el principio de legalidad establecido en el Artículo 8 del Código Penal de Puerto Rico[50] que dispone lo siguiente:

---

caso civil que el Tribunal de Circuito de Apelaciones incumple con su función revisora cuando no permite el perfeccionamiento de un recurso de conformidad con el ordenamiento jurídico vigente. La culminación del trámite de perfeccionamiento del recurso es necesario e indispensable para su disposición final por el Tribunal de Circuito de Apelaciones.

[49] Chiesa Aponte, <u>op. cit.</u>, Vol. III, pág. 159.

[50] 33 L.P.R.A. sec. 3031.

No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.

No se podrán crear por analogía delitos, penas, ni medidas de seguridad.

El tribunal debe considerar el principio de interpretación restrictiva de la ley penal, en el sentido de que al considerar los hechos imputados en la acusación, junto con la ley penal que define el delito imputado, las dudas que permanecen sobre si se satisface o no el tipo penal después de considerar las normas de interpretación de estatutos, deben ser resueltas a favor del acusado. Aunque este principio de interpretación restrictiva de la ley penal favorece al acusado en cuanto al alcance de ese tipo de estatuto, que define un delito, debe tenerse presente que no exige que a las palabras de un estatuto de esa naturaleza debe impartírsele su significado más limitado o que deba hacerse caso omiso de la evidente intención del legislador.[51]

La moción de desestimación basada en que el pliego acusatorio no imputa delito es privilegiada, en el sentido de que puede presentarse en cualquier momento, de conformidad con lo dispuesto en la Regla 63 de Procedimiento Criminal.[52] Sin embargo, si se trata de un defecto subsanable puede ser corregido mediante enmienda al pliego acusatorio. Puede enmendarse una acusación o denuncia para corregir un defecto de insuficiencia.[53]

---

[51] Chiesa Aponte, op. cit., Vol. III, pág. 160; Pueblo v. Hernández Colón, 118 D.P.R. 891, 903 (1987).

[52] 34 L.P.R.A. Ap. II, R. 63.

[53] Chiesa Aponte, op. cit., Vol. III, pág. 160.

Si la acusación o la denuncia adolecieren de algún defecto u omisión sustancial, el tribunal en el cual se ventilare originalmente el proceso podrá permitir, en cualquier momento antes de la convicción o absolución del acusado, las enmiendas necesarias para subsanarlo. Si se tratare de una acusación, el acusado tendrá derecho a que se le celebre nuevamente el acto de lectura de la acusación. Si se tratare de una denuncia, el acusado tendrá derecho a que el juicio se celebre después de los cinco (5) días siguientes a aquel en que se hiciere la enmienda.[54]

A diferencia del defecto de forma, el defecto sustancial es el que perjudica los derechos sustanciales del acusado, bien porque le impide preparar adecuadamente su defensa o porque, sencillamente, tiene el defecto de insuficiencia de la acusación o denuncia.[55] La norma de enmienda al pliego acusatorio para subsanar el defecto sustancial establecida en la Regla 38 (b) de Procedimiento Criminal[56] es de gran liberalidad. Se permiten las enmiendas para corregir el defecto sustancial en cualquier momento antes de la convicción o absolución del acusado. La norma de enmienda para corregir un defecto de forma establecida en la Regla 38 (a) de Procedimiento Criminal[57] es más liberal solo en cuanto establece que las enmiendas son permisibles en cualquier etapa y que el fallo o veredicto subsana tácitamente todo defecto de forma en el pliego acusatorio. No obstante, las enmiendas al pliego acusatorio se permiten antes del fallo o veredicto, lo mismo para el defecto de forma que para el defecto sustancial. La diferencia consiste en que en el caso del

---

[54] Íd., pág. 120.

[55] Íd.

[56] 34 L.P.R.A. Ap. II, R. 38 (b).

[57] 34 L.P.R.A. Ap. II, R. 38 (a).

defecto sustancial, el acusado tiene derecho a una nueva oportunidad de enfrentarse al pliego acusatorio para la alegación correspondiente, y tiempo adicional para preparar su defensa.[58]

El defecto de insuficiencia significa que el pliego acusatorio no imputa delito alguno tipificado bajo las leyes penales de Puerto Rico. El defecto de insuficiencia es causa para la desestimación de la acusación o denuncia.[59] No obstante, la Regla 66 de Procedimiento Criminal[60] permite y exige al Tribunal de Primera Instancia practicar la enmienda de un pliego acusatorio que padece de un defecto sustancial que pueda subsanarse mediante la misma antes de la convicción o absolución del acusado.[61]

El acusado no puede ser válidamente sentenciado si la acusación no imputa delito. Si la enmienda al pliego acusatorio que padece de defecto sustancial, por no imputar delito alguno, no se hace antes del fallo o veredicto, la desestimación será sin perjuicio de que el fiscal inicie un nuevo proceso bajo un nuevo pliego acusatorio sin defecto de suficiencia.[62] Una desestimación de la acusación por un fundamento de derecho ajeno a una determinación de inocencia y absolución, como la solicitada ante el Tribunal de Primera Instancia en este caso, no impide ulteriores procedimientos, en ese Tribunal o en revisión, bajo la cláusula constitucional de doble exposición. No obstante, si el defecto que provoca la desestimación es

---

[58] Chiesa Aponte, op. cit., Vol. III, pág. 120.

[59] Íd., pág. 121.

[60] 34 L.P.R.A. Ap. II, R. 66.

[61] Chiesa Aponte, op. cit., Vol. III, pág. 121.

[62] Íd.; Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. III, R. 67.

insubsanable, como lo sería el de prescripción del delito, entonces habría un impedimento para un nuevo proceso.[63]

IV

Por los fundamentos antes expuestos, hubiéramos confirmado la sentencia recurrida, emitida por el Tribunal de Circuito de Apelaciones, que, a su vez, confirmó el fallo de culpabilidad emitido por el Tribunal de Primera Instancia contra la acusada, en cuanto a su determinación de que la prueba de cargo era suficiente y satisfactoria para concluir de esa forma. No obstante, devolveríamos el presente caso al foro intermedio apelativo para que, una vez remitido los autos originales por el Tribunal de Primera Instancia, resolviera el segundo señalamiento de error levantado por la parte apelante, a los efectos de que la denuncia presentada por alteración a la paz no imputa tipo de delito alguno.


Efraín E. Rivera Pérez
Juez Asociado

---

[63] Chiesa Aponte, op. cit., Vol. II, pág. 265.