EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ÁNGEL SANTIAGO BATISTA y BONIFACIO PABÓN LÓPEZ, acusados y apelantes.

*Número:* CR-62-207     *Resuelto:* 10 de junio de 1963

*Luis Raúl Cruz Jiménez,* abogado de los apelantes; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: Los apelantes fueron convictos por jurado de 4 escalamientos en primer grado perpetrados en 4 establecimientos comerciales pequeños de la zona rural de Barceloneta, en las noches de los días 1, 10, 15 y 22 de marzo de 1961. Al comienzo del juicio la defensa ofreció estipular que en realidad hubo los cuatro escalamientos mencionados porque, dijo, la defensa iba encaminada en otro sentido. Como primero los acusados, a preguntas del juez, dijeron no estar conformes con esa estipulación pero luego de conferenciar con su abogado dijeron estarlo, ante la duda, el juez no admitió la estipulación. Se practicó la prueba con los resultados antes dichos.

Los dos errores que señalan los apelantes son (1) que erró el tribunal al concluir que la testigo que conectó a los acusados con la comisión de los delitos no era cómplice y (2) que abusó de su discreción al imponer sentencias excesivas.

Los escalamientos se cometían de la siguiente forma. Los apelantes operaban con un automóvil que traía Angel Santiago, uno de ellos. De día hacían el reconocimiento del lugar que iban a escalar. Regresaban tarde por la noche o de madrugada luego que los establecimientos estuviesen cerrados. Traían consigo a la testigo Bienvenida Nieves (sobre esto entramos en algunos detalles más adelante). Estacionaban el carro cerca del lugar escogido para esa noche. Hacían bajar del carro a Bienvenida y le instruían que si venía gente les pitara. En otras ocasiones le decían que tosiera. Sacaban del carro los instrumentos, generalmente una barra de las conocidas por "barra de uña" que se utilizan para abrir cajas de mercancías o para desbaratar construcciones de madera. Con la barra forzaban una puerta y entraban. En el automóvil se

llevaban el producto del robo. Luego se dividían entre ellos dos el dinero y las mercancías robadas. Bienvenida no participaba del botín.

La prueba demuestra que la participación de Bienvenida en la operación era forzada por el terror. Desde hacía algunos meses ella vivía en concubinato con Bonifacio Pabón López, el otro apelante. Bonifacio no trabajaba; de día jugaba a lo prohibido y de noche salía en estas expediciones. Le pegaba a ella; en una ocasión le pegó a la madre de ella. Bienvenida se había ido varias veces con su hijo pequeño para casa de su mamá, pero él la iba a buscar, la amenazaba con una cuchilla y se la traía para su casa.

Ella declaró que Bonifacio tenía una cuchilla con la cual la amenazaba con frecuencia. Relata como él, amenazándola con "estasajarla" con la cuchilla la obligó, contra su voluntad, a someterse a tener relaciones sexuales contra natura con él. (T.E. págs. 47–48.) Ella explicó que no quería ir a los robos pero él la obligó bajo amenazas. Copiamos del récord:

> "Entonces yo le dije que yo no iba. Entonces me dijo: 'Tú tienes que ir para allá.' Entonces yo le dije que no podía dejar mi hijo solo; entonces yo no quise ir y me empujó en el carro con una cuchilla abierta." (T.E. pág. 28.)

Así también, bajo coacción fue que ella esperó cerca del carro mientras ellos perpetraban los escalamientos. (A los efectos de leer el récord téngase presente que "Chalemán" es Bonifacio Pabón y que "El Cano" es Angel Santiago, también conocido por "Añe" y "Angel Ferrer".)

> "P. ¿Cuando llegaron a ese sitio, qué pasó ahí?
> R. Lo que pasó ahí, ellos se apearon del carro; entonces Chalemán me dijo que me dijo que me apeara del carro; entonces yo le dije que no, yo no sabía a lo que ellos iban; entonces Chalemán se metió la mano al bolsillo y sacó una cuchilla; entonces me dijo apéate y yo de miedo me apeé. Entonces me dijo: 'Tú tienes que quedarte al lado del carro'. Entonces el Cano sacó una barrita de uña del carro. Entonces me dijo: 'Si cualquiera viene me pitas

> y no vayas a decir que nosotros estamos aquí, y como tú no hagas eso, te vamos a desbaratarte a tajos'." (T.E. págs. 30–31.)

Le preguntaron a la testigo que por qué no gritaba. Explicó que aquello estaba solo, no había gente, que si hubiese habido gente o policía hubiese llamado. (T.E. pág. 44.)

No es necesario señalar más detalles de la prueba. Para otros ejemplos de la coacción de que fue víctima la testigo pueden verse las páginas 35, 41 y 45 de la transcripción de evidencia. (1)

El primer error señalado no se cometió. La testigo Bienvenida Nieves no es cómplice de los escalamientos perpetrados. Su presencia en los lugares de los hechos y su participación pasiva en ellos no fue voluntaria sino que fue debido a coacción y un fundado temor de recibir grave daño corporal. Cómplice es aquel que voluntariamente, a sabiendas, de su libre albedrío e intencionalmente participa en la comisión de un delito. *Pueblo* v. *Montalvo Acevedo*, 83 D.P.R. 727, 730 (1961); *Pueblo* v. *Rosado*, 72 D.P.R. 827, 829 (1951).

Luego de discutir el primer error señalado, los apelantes levantan lo que llaman tres "errores misceláneos". Son tres incidentes menores, los cuales, después de examinarlos, estamos convencidos de que no tienen mérito y, de todas maneras, de tenerlo no justificarían anular la sentencia apelada.

Las penalidades que le fueron impuestas a los apelantes fueron las siguientes: de 7 a 15 años de presidio, con trabajos forzados y sin costas por el primer cargo; una penalidad igual por el segundo cargo; y penalidades iguales por el tercero y cuarto cargos, las cuales cumplirían concurrentemente con el segundo. Aunque esas penalidades están dentro de los límites fijados por la ley para ese delito, Art. 410 del Código

---

(1) Entre personas de esas circunstancias esas amenazas no son meras palabras. Recuérdese a la perjudicada en el caso de *Pueblo* v. *Ramos Padilla*, 88 D.P.R. 384 (1963), la cual un domingo por la mañana expresó temor de que la mataran y al medio día estaba prácticamente picada en pedazos y muerta.

Penal, 33 L.P.R.A. sec. 1593, y por lo tanto la sentencia es legal y válida, creemos que los fines de la justicia quedan cumplidos modificando la sentencia de manera que las penalidades de 7 a 15 años de presidio con trabajos forzados impuéstales a cada uno de los apelantes en cada uno de los cargos se cumplan concurrentemente.

*Así modificada, se confirmará la sentencia del Tribunal Superior, Sala de Arecibo, dictada en este caso en 24 de noviembre de 1961.*