El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
En este recurso se nos solicita la revisión de una sentencia emitida por el Tribunal de Apelaciones, mediante la cual el referido foro revocó el dictamen emitido por el Tribunal de Primera Instancia. En el dictamen revocado el foro primario, luego que el Jurado emitió un veredicto de culpabilidad, sentenció al coacusado, Sr. Angel Luis Santiago Collazo (Ángel L. Santiago), a cumplir de manera consecutiva noventa y nueve años de reclusión por el delito de asesinato en primer grado, veinte años por infracción al Art. 5.04 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 458c, y diez años por infracción al Art. 5.15 de esta misma ley, 25 L.P.R.A. sec. 458n.
Nos corresponde resolver si el Ministerio Público descargó su obligación de probar más allá de duda razonable la responsabilidad criminal del coacusado Ángel L. Santiago. Veamos.
I
El 13 de julio de 2005, el Sr. José González Alicea (Papotito) se encontraba en los predios del Residencial Público Fernando Luis García en el municipio de Utuado, acompañado por el aquí recurrido Ángel L. Santiago —apodado “Luisito”— el hermano de éste, Luis Santiago Collazo —a quien llamaban “Quique”— y Julio Curet Rivera.
Estando el grupo de amistades reunido en dicho lugar, se acercó el joven Christopher Santiago Rivera, quien se dirigió hacia Papotito y, en tono molesto, comenzó a reclamarle la devolución de su automóvil. Alegadamente, ello se debió a que el día anterior éstos habían hecho un intercam *137 bio de automóviles, y el auto que Papotito le había entregado a Christopher Santiago Rivera aparentemente no funcionaba bien.
Luego de proferirse insultos, y ante la negativa de Papotito de devolver el automóvil, Christopher Santiago Rivera se retiró del lugar. Aproximadamente 15 minutos más tarde de suscitada la discusión, éste regresó al lugar donde aún se encontraban reunidos y continuó la discusión con Papotito. El tono de la discusión fue aumentando hasta que, en un momento dado, Christopher Santiago Rivera retiró del baúl de su automóvil un bate con el que agredió a Papotito. A su vez, Papotito le propinó varios golpes.
Posteriormente, Papotito y Luis Santiago Collazo entraron a uno de los edificios del complejo de vivienda antes mencionado. El aquí recurrido Angel L. Santiago no los siguió inicialmente, sino que, acercándose a Christopher Santiago Rivera, continuó con éste la discusión.
Pasados unos minutos, Angel L. Santiago se retiró y se dirigió en la misma dirección que sus compañeros —Papotito y Luis Santiago Collazo— dándoles alcance y subiendo junto con ellos al segundo nivel de uno de los edificios del referido residencial.
Los tres acusados, Papotito, Luis Santiago Collazo y Ángel L. Santiago, descendieron juntos del segundo nivel del edificio y retomaron al lugar donde se encontraba Christopher Santiago Rivera. Una vez allí, se observó a Luis Santiago Rivera entregando a Papotito un revólver color negro niquelado.
Simultáneamente, Luis Santiago Collazo y Ángel L. Santiago flanquearon las salidas del edificio donde se encontraban, mientras Papotito le disparó a Christopher Santiago Rivera, hiriéndole en uno de sus brazos. Papotito logró colocar a Christopher Santiago Rivera de espalda y, sujetándolo en el suelo con su antebrazo, le disparó en tres ocasiones hasta darle muerte. Luego, éste colocó el revólver en el bolsillo de su pantalón y se dirigió hacia un edi *138 ficio del residencial. Acto seguido, Luis Santiago Collazo alcanzó a Papotito y se adentró con él al edificio.
Los hechos ocurridos fueron observados, entre otros testigos, por la Sra. Fredeswinda Reyes Rodríguez, quien declaró que se encontraba, al momento del incidente, en el área exterior del Registro de la Propiedad durante su receso de almuerzo. Inmediatamente se comunicó con el Centro de Servicios Estatales y Municipales de Utuado, contiguo al Residencial Público Fernando Luis García, y avisó lo sucedido.
Como resultado de esta información, varios agentes del orden público se personaron al lugar. Entre ellos, el agente Javier Pérez Heredia, quien recibió una confidencia en la cual se le comunicó que el arma utilizada para cometer el asesinato había sido ocultada en el apartamento número 12, localizado en el segundo nivel del edificio del residencial en cuyo exterior ocurrieron los hechos. El agente Javier Pérez Heredia transmitió la información a su supervisor y, por órdenes de éste, se dirigió a corroborar la confidencia obtenida.
Mientras se dirigía al segundo nivel del edificio del residencial, el agente Javier Pérez Heredia observó manchas de sangre en el pasamano de la escalera y en la pared que colindaba con el apartamento número 12 identificado en la confidencia. Dicho apartamento pertenecía a la Sra. Carmen Cortés Montero, quien accedió al registro. Allí, específicamente, en la habitación de Michael Molina Cortés —hijo de la Sra. Carmen Cortés Montero— se confiscó una pistola calibre 9 mm color negro y niquelada, junto con dos magacines cargados de municiones. La pistola estaba escondida entre ropa, en una caja de cartón. El arma fue ocupada y el hijo de la Sra. Carmen Cortés Montero fue citado como sospechoso. Cabe señalar que Michael Molina Cortés era el vecino de apartamento del aquí recurrido, Angel L. Santiago, y su hermano Luis Santiago Collazo.
Por otro lado, el agente Carlos Alvarado, tras recibir la *139 información del incidente, entrevistó a la Sra. Juana del Valle, abuela del occiso Christopher Santiago Rivera, quien suscribió una declaración jurada en relación con lo que observó desde su apartamento en dicho residencial. De su testimonio surgieron los nombres de los involucrados en el incidente criminal.
Posteriormente, Michael Molina Cortés declaró en entrevista con el agente Carlos Alvarado que Ángel L. Santiago le daba a guardar armas por períodos de tres semanas aproximadamente. Expresó, además, que la noche del incidente éste se personó en su apartamento y le pidió que le devolviera el arma. Cuando Michael Molina Cortés le dijo que había sido confiscada, éste le amenazó diciéndole que “tenía que hacer buche o te mando a matar”. Petición de certiorari, pág. 11. Este testigo declaró que el revolver utilizado para cometer el asesinato se lo había devuelto a Ángel L. Santiago antes de que ocurriesen los hechos que culminaron con la muerte de Christopher Santiago Rivera.
El informe del patólogo de Ciencias Forenses reflejó que los plomos recuperados del cuerpo del occiso correspondían a un arma de fuego calibre 357. Dicha arma resultó ser la que el testigo Michael Molina Cortés le había entregado un mes y medio atrás a Ángel L. Santiago y que fue utilizada por Papotito en el asesinato de Christopher Santiago Rivera.
Por estos hechos, José M. González Alicea —Papotito— el aquí recurrido Ángel L. Santiago, y su hermano Luis Santiago Collazo, fueron acusados y procesados por el asesinato del joven Christopher Santiago Rivera.(1)
En lo pertinente, el Ministerio Público presentó contra Ángel L. Santiago tres acusaciones por infracciones a los *140 Arts. 5.04(2) y 5.15, supra,(3) de la Ley Núm. 404 de 11 de septiembre de 2000, denominada Ley de Armas de Puerto Rico;(4) infracción al Art. 106 del Código Penal de Puerto Rico,(5) infracción al Art. 289 del Código Penal de Puerto Rico(6) e infracción al Art. 291 Código Penal de Puerto Rico.(7)
Ángel L. Santiago fue hallado culpable por los delitos imputados en un juicio por Jurado, excepto en dos de los cargos por infracción al Art. 5.04 de la Ley de Armas de Puerto Rico, supra, y por los cargos de infracción a los Arts. 289 y 291 del Código Penal de Puerto Rico, supra.
Consiguientemente, éste fue sentenciado a cumplir una pena de noventa y nueve años de cárcel por el cargo de asesinato en primer grado, veinte años de cárcel por el cargo de infracción al Art. 5.04 de la Ley de Armas de Puerto Rico, supra, y diez años por infracción al Art. 5.15 de la Ley de Armas de Puerto Rico, supra, y el referido Art. 106 del Código Penal de Puerto Rico. Las penas se cumplirían de manera consecutiva.
Inconforme con esta determinación, el acusado Ángel L. Santiago acudió ante el Tribunal de Apelaciones y argumentó la comisión de los errores siguientes:
a. La prueba de cargo fue insuficiente en derecho para establecer la participación del apelante mediante concierto y común acuerdo.
b. Erró manifiestamente el jurado, como cuestión de derecho al no conceder ál acusado beneficio de la duda razonable, vista *141 la totalidad de la prueba en cuanto a los delitos que fueron instruidos.
c. Erró el honorable Juez de Primera Instancia, Alvin D. Rivera Rivera, al no absolverlo perentoriamente. (Enfasis suplido.) Apéndice, pág. 49.
El 30 de octubre de 2007, el tribunal intermedio apelativo emitió su sentencia mediante la cual revocó los veredictos de culpabilidad contra Ángel L. Santiago emitidos por el Jurado.(8) Los veredictos rendidos contra los restantes acusados fueron confirmados.
Inconforme, el Ministerio Público solicitó una oportuna reconsideración, la cual fue declarada “no ha lugar”. Es de dicha Resolución que el Ministerio Público acude ante nosotros señalando que el foro intermedio apelativo cometió los errores siguientes:

Incidió el Tribunal de Apelaciones al sustituir el criterio del juzgador mediato de la prueba, y resolver que la responsabilidad criminal del convicto-recurrido por los delitos por los cuales fue inculpado no quedaron probados.

La apreciación del foro apelativo de que la “única prueba presentada en contra de Luisito estableció su mera presencia durante la comisión de unos delitos”[,] no corresponde a la prueba desfilada durante el juicio y consignada en la Transcripción de éste. Tampoco es cónsona al récord su conclusión en el sentido de que hubo ausencia de prueba sobre circunstancias prospectivas, concomitantes o retrospectivas. (Enfasis suplido.) Petición de certiorari, pág. 13.
II
En síntesis, la controversia planteada se limita a establecer si el Ministerio Público cumplió con su deber de pro- *142 bar, más allá de duda razonable, la responsabilidad criminal como coautor del coacusado Angel L. Santiago por su participación en los delitos imputados. Veamos la doctrina aplicable.
La Constitución de Puerto Rico garantiza a todos los ciudadanos el derecho fundamental a la presunción de inocencia en todo proceso criminal, hasta que se pruebe lo contrario.(9)
Para controvertir la presunción de inocencia que le asiste a un encausado, se le exige al Ministerio Público, por disposición constitucional, un quantum de prueba más allá de toda duda razonable. Ello requiere que el Estado presente la prueba respecto a cada uno de los elementos del delito, su conexión con el acusado y la intención o negligencia criminal de éste.(10)
Según lo anterior, la Regla 110 de Procedimiento Criminal(11) establece que el juzgador deberá absolver a un acusado cuando exista una duda razonable de que no cometió el delito imputado.
La duda razonable que opera en función de nuestro ordenamiento procesal criminal no es una duda especulativa ni imaginable, ni cualquier duda posible.(12) Por el contrario, es aquella duda fundada que surge como producto del raciocinio de todos los elementos de juicio involucrados en un caso.(13) Es decir, existe una duda razonable cuando el juzgador queda insatisfecho con la prueba presentada.(14) Por esto, para que se justifique la absolución de un acusado, la duda razonable debe ser el resultado *143 de la consideración serena, justa e imparcial de la totalidad de la evidencia del caso o de la falta de prueba suficiente en apoyo de la acusación.(15)
En este sentido, para poder cumplir con el estándar de prueba más allá de toda duda razonable, el Estado deberá probar cada uno de los elementos del delito imputado y producir “certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido”.(16)
En lo que respecta a la participación en una empresa criminal, el Código Penal de 2004(17) adoptó la teoría civilista de la diferenciación, según la cual se configuran dos posibles categorías de participación: los autores y los cooperadores.(18) Así se establecen varias gradaciones de responsabilidad aplicables a las distintas conductas involucradas en la consumación de una conducta delictiva.(19)
El Art. 43 del Código Penal dispone en lo pertinente que se consideran autores:
(a) Los que toman parte directa en la comisión del delito.
(b) Los que fuerzan, provocan, instigan o inducen a otra persona a cometer el delito.
(c) Los que se valen de una persona inimputable para cometer el delito.
(d) Los que cooperan con actos anteriores, simultáneos o posteriores a la comisión del delito, sin cuya participación no hubiera podido realizarse el acto delictivo.
(e) Los que se valen de una persona jurídica para cometer el delito.
(f) Los que actúen en representación de otro o como miembro, director, agente o propietario de una persona jurídica, *144 siempre que haya una ley que tipifique el delito y realicen la conducta delictiva, aunque los elementos especiales que fundamentan el delito no concurran con él pero sí en el representado o en la persona jurídica.(20)
El inciso (d) del precitado artículo responsabiliza como autor a quien coopera con actos anteriores, simultáneos o posteriores a la comisión del delito y sin cuya participación no se hubiera podido cometer el delito;(21) es decir, aquellas personas que ayudan a los autores directos del delito de manera consciente e intencional denominadas, por ende, coautores.(22) No es indispensable que el acusado ejecute personalmente el acto; basta su presencia pasiva siempre que su responsabilidad como coautor pueda establecerse y probarse por actos anteriores, resultado de una conspiración o un designio común.(23)
Por lo tanto, en los casos de coautoría existe un acuerdo de distribución de funciones entre las personas involucradas para cometer el delito.(24) Además de participar en el acuerdo, el coautor tiene que haber contribuido de alguna manera a la producción de la ofensa, siendo suficiente que la contribución constituya un eslabón importante en el plan delictivo.(25) Esta participación se puede establecer mediante prueba directa o circunstancial.(26)
*145 La mera presencia durante la comisión del delito no es suficiente por sí sola para sostener una convicción de coautoría. Tampoco se considera coautor aquella persona que, sin saberlo, participa en la comisión de un delito.(27) Para que esta participación sea sancionada, debe realizarse con intención o negligencia criminal y probarse más allá de toda duda razonable.(28) Una vez probada, a esta persona se le imputa responsabilidad a título de autor en la actividad delictiva y se le acusará por el mismo delito.
Para los fines de la imposición de la pena, se tomará en consideración la medida en que participó el autor en el hecho delictivo, según las circunstancias personales que caractericen su participación.(29)
III
Como hemos reseñado, Ángel L. Santiago fue parte del grupo de jóvenes que participaron en el asesinato de Christopher Santiago Rivera. El Jurado, luego de evaluar la prueba y escuchar los testimonios de los testigos, entendió que la participación de Ángel L. Santiago fue esencial y en común acuerdo con los demás acusados en la ejecución del acto delictivo, de modo que su responsabilidad como coautor quedó establecida. En consecuencia, dicho foro lo declaró culpable por los delitos de asesinato en primer grado e infracciones a la Ley de Armas de Puerto Rico.(30)
A contrario sensu, el foro intermedio apelativo revocó únicamente el dictamen de culpabilidad emitido contra Ángel L. Santiago por entender que la prueba contra éste *146 no fue satisfactoria y sólo estableció su mera presencia en el lugar durante la comisión de unos delitos. No compartimos tal apreciación.
La actuación delictiva imputada a Angel L. Santiago está dentro del tipo de autor que se incluye en el Art. 43(d) del Código Penal de 2004 (33 L.P.R.A. sec. 4671(d)). Dicho artículo clasifica como autor a toda persona que coopere con actos anteriores, simultáneos o posteriores a la comisión del delito, sin cuya participación el delito no hubiera podido realizarse.
A esos efectos, el Ministerio Público presentó como prueba de cargo el testimonio de varios testigos: la Sra. Juana del Valle, abuela del occiso Christopher Santiago Rivera, la Sra. Fredeswinda Rodríguez, Michael Molina Cortés y la madre de éste, Sra. Carmen Cortés Montero.
Respecto a la forma en que ocurrieron los hechos, todos los testimonios sostienen que Angel L. Santiago contribuyó a dar tiempo para que su hermano Luis Santiago Collazo le facilitara el arma a “Papotito”, prolongando la discusión con Christopher Santiago Rivera.(31) Asimismo, los testimonios coinciden en que Angel L. Santiago estaba junto a “Papotito” cuando descendieron del edificio y se dirigieron hacia Christopher Santiago Rivera.(32)
La prueba reveló que en el momento cuando “Papotito” se acercó a Christopher Santiago Rivera con intención de dispararle para matarlo, Angel L. Santiago y su hermano, Luis Santiago Collazo, se acomodaron cubriendo las salidas del lugar en donde se encontraban.(33) Finalmente, una vez “Papotito” disparó, todos se alejaron del lugar.
Por otro lado, Michael Molina Cortés, quien era vecino de Angel L. Santiago, declaró que éste acostumbraba darle *147 las armas que poseía ilegalmente para que se las escondiera. De su testimonio surgió la descripción del arma de fuego utilizada en el crimen. Esta información fue corroborada por el Sr. Carlos Rivera Pérez, técnico de balística de Ciencias Forenses, quien confirmó que las balas encontradas en el cuerpo de Christopher Santiago Rivera coincidían con las del arma descrita por Michael Molina. Asimismo, expresó que Ángel L. Santiago, luego de amenazarlo, le confesó que había desaparecido el arma utilizada para el asesinato de Christopher Santiago Rivera.(34)
Las circunstancias antes descritas manifiestan que la participación de Ángel L. Santiago fue voluntaria y consciente dentro del grupo que ejecutó el delito. En este sentido, su presencia en el lugar no fue accidental, sino que contribuyó junto con los demás a la consumación del asesinato.
En resumen, Ángel L. Santiago era el propietario del arma utilizada para asesinar a Christopher Santiago Rivera, prolongó la discusión, se unió a la búsqueda del arma, cooperó para obstruir las salidas del lugar de la ejecución, huyó de la escena una vez consumado el delito y admitió a Molina Cortés la desaparición del arma.
Finalmente, al considerar los elementos que utilizó el juzgador primario para dar por probado los hechos, hay que tener en cuenta lo que propone la Regla 10(D) de Evidencia,(35) en términos de que es suficiente la evidencia directa de un testigo que le merezca al juzgador entero crédito para probar cualquier hecho salvo, claro está, que por ley se disponga otra cosa. Esto es así aunque no se trate del testimonio “perfecto” o libre de contradicciones.(36)
Reiteradamente hemos establecido que, al enfrentarnos a la tarea de revisar cuestiones relativas a las *148 convicciones criminales, la norma es que la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador.(37) Es el foro sentenciador quien está en mejor posición, por haber escuchado a los testigos y haber observado su comportamiento.(38) En consecuencia, las determinaciones que hace el Tribunal de Primera Instancia no deben descartarse en forma arbitraria ni ser sustituidas por el criterio del tribunal apelativo en ausencia de prejuicio, pasión o parcialidad.(39)
Aunque la determinación de culpabilidad hecha por el juzgador de hechos —Tribunal de Primera Instancia— merece gran deferencia, ésta podrá ser revocada en apelación si: (1) se demuestra que hubo prejuicio, parcialidad o pasión, o (2) la prueba no concuerda con la realidad fáctica, es increíble o es imposible.(40)
La apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y de derecho.(41) El análisis de la prueba presentada requiere tanto de la experiencia del juzgador como de su conocimiento del Derecho.(42) Al ser esto así, los tribunales apelativos sólo intervendrán con la apreciación de la prueba cuando ésta no concuerde con la realidad fáctica o sea inherentemente imposible o increíble.(43) Este Tribunal revocará un fallo inculpatorio cuando el resultado de ese análisis deje serias dudas, razonables y fundadas, sobre la culpabilidad del acusado.(44)
*149 A la luz de los hechos expuestos, entendemos que la prueba ofrecida por el Ministerio Público fue satisfactoria en cuanto a la responsabilidad criminal del acusado Ángel L. Santiago. Del mismo modo, la figura de la coautoría en la situación de hechos quedó establecida con prueba vinculante. Es evidente que Ángel L. Santiago tenía conocimiento pleno de que las actuaciones concertadas de sus compañeros iban dirigidas a cometer el delito de asesinato. En ningún momento su conducta reflejó la intención de evitar el incidente, sino que, por el contrario, tuvo un rol activo durante la ocurrencia del crimen. Por ende, es forzoso concluir que actuó en concierto y común acuerdo en la ejecución común del hecho delictivo.
IV
Por los fundamentos antes expresados, se revoca la sentencia del Tribunal de Apelaciones únicamente en lo que respecta al acusado Ángel L. Santiago Collazo.
La Jueza Asociada Señora Fiol Matta concurrió con el resultado sin opinión escrita. La Juez Asociada Señora Rodríguez Rodríguez disintió e hizo constar lo siguiente: “Disiento por entender que, como cuestión de derecho, el Ministerio Fiscal no probó más allá de duda razonable la culpabilidad del señor Ángel Santiago Collazo. Estimo que las afirmaciones sobre los hechos en las cuales descansa este Tribunal para sustentar el resultado al que arriba no se ajustan a la prueba desfilada, según ésta surge del expediente.
La ponencia afirma que el recurrido participó durante la comisión del delito de forma esencial, ya que prolongó la discusión con el occiso para que su hermano le facilitara el arma a José González Alicea y que luego se acomodó junto a su hermano ‘cubriendo’ las salidas del lugar mientras se propinaron los disparos. Tras examinar la transcripción de *150 la prueba, debo señalar que dichas aseveraciones constituyen una extrapolación de las declaraciones emitidas por los testigos presentados por el Ministerio Fiscal. De otra parte, la opinión del Tribunal descansa en hechos anteriores y posteriores a la comisión del delito para sostener la coautoría del recurrido en el delito imputado. No obstante, omite considerar que los hechos en que descansa —la previa posesión de armas de fuego y la posterior desaparición del arma de fuego utilizada en la comisión el delito por parte del recurrido— dieron lugar a la presentación de unas acusaciones en su contra que culminaron en veredictos de no culpabilidad.
Coincido con el criterio del foro recurrido en cuanto a que la prueba desfilada en el juicio sólo estableció la mera presencia del Sr. Ángel L. Santiago Collazo durante la comisión del delito que se le atribuye. Por lo anterior no puedo, en conciencia, impartirle mi anuencia a la opinión del Tribunal.

 Ya que el recurso ante nuestra consideración se limita a atender la solicitud del Ministerio Público respecto al dictamen emitido por el Tribunal de Primera Instancia contra Angel L. Santiago, no haremos referencia a las acusaciones contra los otros dos imputados.

 Las denuncias relacionadas con estos cargos disponen lo siguiente: “Porta[r] un arma de fuego (pistola 9 mm, SW, Modelo 39, Serie 65800, color gris con cachas marrón) sin haber obtenido una licencia para ello, Portar un arma de fuego, pistola .25 sin haber obtenido licencia para ello ....” “Porta[r], conduci[r] y transporter] un arma de fuego (revólver), sin haber obtenido una licencia [para ello].” (Énfasis suplido.) Apéndice, págs. 78 y 80.

 Cargo formulado por portar, conducir y transportar un arma de fuego (revólver) sin haber obtenido licencia, y disparar con ella. Apéndice, pág. 81.

 25 L.P.R.A. secs. 455-460k.

 Asesinato en primer grado, 33 L.P.R.A. sec. 4734.

 Amenaza a un testigo, 33 L.P.R.A. sec. 4917.

 Destrucción de la prueba, 33 L.P.R.A. sec. 4919.

 Recordamos que los tres coacusados acudieron ante el Tribunal de Apelaciones solicitando la revisión de la sentencia emitida. Dicho foro consolidó el caso KLAN 200600331 de Ángel L. Santiago Collazo con los de los dos coimputados, José M. González Alicea (caso KLAN200600337) y Luis Santiago Collazo (caso KLAN 200600347).
El foro intermedio apelativo emitió una sentencia confirmando todas las convicciones de los acusados, excepto la de Ángel L. Santiago, el cual fue absuelto de todos los cargos.

 Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1.

 Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 99 (2000); Pueblo en interés menor F.S.C., 128 D.P.R. 931, 941-942 (1991); Pueblo v. Rodríguez Román, 128 D.P.R. 121, 131 (1991).

 34 L.P.R.A. Ap. II.

 Pueblo v. Irizarry, 156 D.P.R. 780, 788 (2002).

 íd.

 Pueblo v. Irizarry, supra, pág. 788.

 íd.

 íd., pág. 787.

 Art. 42 (33 L.P.R.A. sec. 4670).

 E.L. Chiesa Aponte, Derecho Penal Sustantiuo, Estados Unidos, Pubs. JTS, 2007, pág. 184; D. Nevares-Muñiz, Derecho Penal Puertorriqueño: Parte General, 5ta ed. rev., San Juan, Inst, para el Desarrollo del Derecho, 2005, pág. 362.

 Consecuentemente, el Código Penal de 2004 trata la figura del cooperador de forma más benigna que al autor del delito, al imponérsele una pena igual a la mitad de la pena señalada para el delito o su tentativa, según corresponda, hasta un máximo de diez años. Véase Art. 45 del Código Penal de 2004 (33 L.P.R.A. sec. 4673).

 33 L.P.R.A. sec. 4671.

 Nevares-Muñiz, op. cit., págs. 364-365.

 La autoría contempla tres modalidades:
a. La autoría directa, en la cual se interviene personalmente en la comisión del delito.
b. La autoría mediata, en la cual se utiliza otra persona como instrumento para cometer el delito.
c. La coautoría que se configura cuando más de una persona acuerdan la distribución de funciones. Cada una de ellas interviene de alguna manera en la comisión del delito. Es necesario un acuerdo previo. Véase Chiesa Aponte, op. cit., págs. 178-179.

 Pueblo v. Aponte González, 83 D.P.R. 511, 519-520 (1961).

 Chiesa Aponte, op. cit., pág. 178.

 íd.

 Pueblo v. Acabá Raíces, 118 D.P.R. 369 (1987).

 Pueblo v. Pagán, Ortiz, 130 D.P.R. 470, 478-479 (1992).

 R.E. Ortega Vélez, Código Penal de Puerto Rico, San Juan, Eds. Chrisely, 2004, pág. 68. Véanse, además: Pueblo v. Santiago Batista, 88 D.P.R. 543 (1963); Pueblo v. Agosto Castro, 102 D.P.R. 441 (1974); Pueblo v. Santos Ortiz, 104 D.P.R. 115 (1975).

 Nevares-Muñiz, op. cit., págs. 364-365.

 Sentencia emitida por el Tribunal de Primera Instancia, Apéndice de la Petición de certiorari, págs. 100-106.

 íd., págs. 340-341.

 íd., pág. 342.

 Testimonio de la Sra. Juana del Valle, Transcripción de la prueba, Apéndice de la Petición de certiorari, págs. 342-343.

 íd„ pág. 349.

 32 L.P.R.A. Ap. IV.

 Pueblo v. Chévere Heredia, 139 D.P.R. 1 (1995).

 Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49 (1991).

 Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986).

 Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pueblo v. Maisonave Rodríguez, supra.

 Pueblo v. Irizarry, supra, pág. 788; Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454, 472 (1988).

 Pueblo v. Rivero, Lugo y Almodóvar, supra.

 Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R. 545 (1974).

 Pueblo v. Acevedo Estrada, supra.

 íd.